Day, J.
 

 Peter J. Merz, an employee of the Lick Run Coal & Clay Company, was shot and killed by his
 
 *37
 
 son-in-law, James McManaway. Elizabeth. Merz, widow of decedent, filed her application for compensation from the State Insurance Fund, which application the Industrial Commission denied upon the sole ground “that the decedent’s death was not the result of an injury sustained in the course of and arising out of his employment. ’ ’ On appeal to the Court of Common Pleas of Athens county, Ohio, judgment was rendered in favor of her right to participate in the fund, which judgment was affirmed by the Court of Appeals. A motion to certify the record was allowed by this court.
 

 The Lick Run Coal & Clay Company, a mining corporation in Athens county, was involved in a miner’s strike in the spring of 1927, due to its “open shop” policy. Though decedent owned one-fifth of the stock of the company, was its president and a member of its board of directors, he took no active part in directing the affairs of the corporation, the executive duties being entrusted to others.
 

 Decedent worked in the mine as an ordinary employee, “filling coal.” When the strike became more intense, the company stationed guards to protect its property, and placed decedent in charge as captain of th^ guard. His hours of duty were from six o’clock in the evening to six o ’clock in the morning of the following day. That the decedent was an employee of the company was admitted by answer and hence was not an issue in the case.
 

 Decedent’s son-in-law, James McManaway, was a member and supporter of the union organization, and ill-feeling developed between the two.
 

 On the morning of August 4, 1927, decedent returned home from work, apparently under the influence of liquor. Soon after his arrival, he argued with his son, attacked and beat him. After that subsided,’ decedent armed himself with an axe and went to Mc-Manaway’s porch and threatened him. A few minutes
 
 *38
 
 later, decedent and McManaway encountered one another on the road not far from where they lived. A fight ensued, in which decedent stabbed McManaway in the back of the neck and the latter shot and killed decedent. It appears that at the time of this occurrence decedent was on his way to the office of the company to make a report.
 

 It is the contention of the Industrial Commission that decedent was not acting as an employee of the company at the time he met his death, but that he was killed as a result of a family quarrel. The widow contends, however, that the real cause of decedent’s death was the labor situation at the mine; that he was killed while in the performance -of his duties as an employee of the company and while in the course of his employment; that an intentional assault upon a workman is compensable if it results from a risk or hazard that has its origin in his employment and is reasonably incident thereto. The record presents the question whether decedent was killed in the course of his employment.
 

 A workman will be deemed to have been killed in the course of his employment if the conditions, activities and environment of his employment bear to his death, directly or incidentally, the relation of cause to effect.
 
 Industrial Commission
 
 v.
 
 Weigandt,
 
 102 Ohio St., 1, 130 N. E., 38;
 
 Grabler Mfg. Co.
 
 v.
 
 Wrobel,
 
 125 Ohio St., 265, 181 N. E., 97.
 

 In
 
 Industrial Commission
 
 v.
 
 Weigandt, supra,
 
 the court at page 7, said: “We'think it clear that the framers of the Constitution intended to provide that the employment should have' some causal connection directly or incidentally, with the injury, either through its activities, its conditions or its environments.”
 

 In Gregory v.
 
 Industrial Commission,
 
 129 Ohio St., 365, 195 N. E., 699, it was held, in paragraph 1 of the syllabus, that: “A miner employed in an ‘open shop’ mine located near a unionized mining district, is sub
 
 *39
 
 ject to a continuous hazard in this day and age greater than is the general public in the community by reason of such condition and environment, which are sufficient to furnish a causal connection between the employment and the injury, causing or contributing to the death of such miner when he is attacked and beaten while in the zone of his employment by men from the nearby union mines, and thus make the case compensable and entitle his dependents to participate in the State Insurance Fund.”
 

 What constitutes a zone of employment? It is the place of employment and the area thereabout, including the means of ingress thereto and egress therefrom, under control of the employer.
 

 In the
 
 Gregory case, supra,
 
 an employee, who was on his employer’s premises, but about two hundred yards from the place of active employment, was held to be within the zone of employment. To the same effect, see
 
 Kasari
 
 v.
 
 Industrial Commission,
 
 125 Ohio St., 410, 181 N. E., 809, 82 A. L. R, 1040.
 

 In
 
 Industrial Commission
 
 v.
 
 Barber,
 
 117 Ohio St., 373, 159 N. E., 363, a workman, while on his way to work, was injured outside, but at the ingress to, the premises of his employer. The court held that when an employee, for the purpose of reaching his place of employment, reaches a zone just outside the enclosure of his employer, which furnishes the only unobstructed access thereto, he will be deemed to have reached the zone of his employment. The court held untenable the argument of counsel that such rule would extend the zone of employment to all points between the place of employment and place of abode of the employee.
 

 In
 
 Kasari
 
 v.
 
 Industrial Commission, supra,
 
 the court, commenting on this phase of the
 
 Barber case,
 
 stated that the above rule was based on the principle that the zone of employment was under the control of the employer.
 

 In the instant case, decedent was killed outside of
 
 *40
 
 the zone of his employment, a distance of about one anci a half miles from the mine property of the company and on premises not under its control.
 

 Though the “open shop” policy at the mine subjected him to a condition and environment of continuous hazards of employment
 
 (Gregory
 
 v.
 
 Industrial Commission, supra),
 
 due to the strike, his duties were limited to the zone of his employment and did not extend to territory not under his employer’s control. Decedent’s employment as captain of the guard at the mine was a circumstance which had no causal relation to his death.
 

 There being no direct causal connection between decedent’s employment and his death, he cannot be held to have died from accidental injuries sustained while in the course of his employment. His death, consequently, is not compensable.
 

 Judgment reversed and judgment for appellant.
 

 Weygandt, C. J., Matthias, Zimmerman, Williams, Myers and Gorman, JJ., concur.