**JANICKI, Appellant,**

v.

**KFORCE.COM, Inc. et al., Appellee.**

[Cite as *Janicki v. Kforce.com,* 167 Ohio App.3d 572, 2006-Ohio-3370.]

Court of Appeals of Ohio,
Second District, Montgomery County.

No. 21183.

Decided June 30, 2006.

</div>

574

Patrick K. Dunphy, for appellant.

James G. Neary and Salvatore A. Gilene, for appellee Kforce.com.

Diana K. Bond, Assistant Attorney General, for appellee BWC.

WOLFF, Judge.

{¶ 1} Judith Janicki appeals from a judgment of the Montgomery County Court of Common Pleas, which granted the summary judgment motions of her employer, Kforce.com, Inc., and of the Administrator of the Bureau of Workers' Compensation ("Administrator"). The effect of the trial court judgment was to affirm the decision of the Industrial Commission of Ohio, which denied Janicki's claim for workers' compensation benefits.

{¶ 2} The facts of this case are largely undisputed.

{¶ 3} Janicki, a registered nurse, was employed by Kforce, a company that provides professional staffing to clients on a temporary-contract and direct-placement basis. In the health-care area, Kforce provides clinical staffing and allied health staffing. The clinical staffing include primarily nurses—both registered nurses (RNs) and licensed practical nurses and nursing assistants; the allied health staffing include radiology technicians, respiratory therapists, physical therapists, and approximately 200 other categories. Although it serves physician offices, Kforce's paying clients are primarily hospitals and nursing homes. In the Dayton area, its hospital clients include Miami Valley Hospital, Southview Hospital, Kettering Medical Center, Dayton Heart Hospital, and Good Samaritan Hospital. Kforce assigns its employee staff, such as its registered nurses, to perform duties at the client's location.

{¶ 4} Janicki began working as a registered nurse for Kforce on July 3, 2001. In 2001 and 2002, Janicki was generally assigned to work at Good Samaritan Hospital in its emergency room on Fridays from 3:00 p.m. to 11:00 p.m. For safety and convenience reasons, Janicki drove to Good Samaritan on days that she worked. In addition to street parking, two parking areas were available to employees: a parking garage on the same side of the street as the hospital and an employee-only parking lot across Philadelphia Drive, a public street. Employees were required to pay for parking in the garage whereas the parking lot was free of charge. Initially, Janicki parked in the garage, because there were no attendants in the booths when her shift ended and, consequently, she was not charged to park there. When the attendants' hours were extended, Janicki began to park in the employee lot.

{¶ 5} On December 31, 2002, Janicki was scheduled to work at Good Samaritan's emergency room from 9:00 a.m. to 5:30 p.m. At the end of her shift, Janicki went to the nurse's station to have her Kforce time sheet signed and then left. Janicki then headed to her car, which was parked in the employee parking lot across the street from the hospital. As Janicki crossed Philadelphia Drive in the crosswalk, she was struck by a vehicle that failed to stop for a red light. Janicki suffered serious injuries.

{¶ 6} Following the accident, Janicki filed a claim for workers' compensation benefits. On May 14, 2003, the commission allowed her claim.[1] Kforce sought reconsideration of the order. On October 29, 2003, the Industrial Commission vacated the May 14, 2003 order, reasoning:

{¶ 7} "The Industrial Commission finds that the order of the Staff Hearing Officer is based on a clear mistake of law, and that the exercise of continuing jurisdiction in this case is appropriate. This clear mistake of law is concerning the Staff Hearing Officer's finding that the injured worker sustained a compensable injury based on a finding that the injury was sustained as a result of crossing a busy public street at a crosswalk in order to reach a parking lot provided by the employer. The Industrial Commission finds that the Staff Hearing Officer order is contrary to well established case law with respect to the 'coming and going' rule."

{¶ 8} On December 31, 2003, Janicki appealed the decision of the commission to the Montgomery County Court of Common Pleas, pursuant to R.C. 4123.512. Kforce and the Administrator filed motions for summary judgment. The trial court granted the motions, concluding that Janicki's injuries were not received in the course of and arising out of her employment. The court reasoned that Janicki was a fixed-situs employee and that she could not overcome the "coming and going" rule.

{¶ 9} Janicki appeals from the trial court's judgment, raising two assignments of error. We will address the assignments together.

{¶ 10} I. "The trial court erred in determining that reasonable minds could only conclude that appellant was a fixed-situs employee and therefore barred from compensation by application of the coming and going rule."

{¶ 11} II. "The trial court erred in failing to follow precedent established by the Ohio Supreme Court in its per curiam decision in *Baughman v. Eaton Corp.* (1980), 62 Ohio St.2d 62, 16 O.O.3d 45, 402 N.E.2d 1201, and in failing to find that it would be unreasonable to deny appellant compensation."

{¶ 12} Summary judgment may be granted when the moving party demonstrates that (1) there is no genuine issue of material fact, (2) the moving party is entitled to judgment as a matter of law, and (3) viewing the evidence most strongly in favor of the nonmoving party, reasonable minds can come to but one

---

1. The Industrial Commission initially allowed her claim for the following injuries: closed head injury, right orbital fracture, left rib fractures, bilateral upper extremity deep venous thrombosis, right frontal and temporal bone fractures, pulmonary contusion, left lower extremity superficial saphenous thrombosis, right eye retrobulbar hemorrhage, cerebral edema, traumatic brain injury with coma, multiple contusions and abrasions, keratoconjunctivitis, contusion of the right eye, right subject visual disturbance, and right refraction disorder.

conclusion and that conclusion is adverse to the party against whom the motion for summary judgment is made. Civ.R. 56(C); *State ex rel. Grady v. State Emp. Relations Bd.* (1997), 78 Ohio St.3d 181, 183, 677 N.E.2d 343; *Harless v. Willis Day Warehousing Co.* (1978), 54 Ohio St.2d 64, 66, 8 O.O.3d 73, 375 N.E.2d 46. The moving party "bears the initial burden of informing the trial court of the basis for the motion, and identifying those portions of the record that demonstrate the absence of a genuine issue of material fact on the essential element(s) of the nonmoving party's claims." *Dresher v. Burt* (1996), 75 Ohio St.3d 280, 293, 662 N.E.2d 264. If the moving party satisfies its initial burden, "the nonmoving party then has a reciprocal burden * * * to set forth specific facts showing that there is a genuine issue for trial and, if the nonmovant does not so respond, summary judgment, if appropriate, shall be entered against the nonmoving party." Id.; see Civ.R. 56(E). We review de novo the trial court's grant of summary judgment. See *Helton v. Scioto Cty. Bd. of Commrs.* (1997), 123 Ohio App.3d 158, 162, 703 N.E.2d 841.

{¶ 13} Ohio's workers' compensation law covers injuries that are "received in the course of, and arising out of, the injured employee's employment." R.C. 4123.01(C). "In the course of" refers to the time, place, and circumstances of the injury, and limits compensation to injuries received while the employee was engaged in a duty required by the employer. *Fisher v. Mayfield* (1990), 49 Ohio St.3d 275, 551 N.E.2d 1271. "Arising out of" requires a causal connection between the injury and the employment. Id.

{¶ 14} "The coming-and-going rule is a tool used to determine whether an injury suffered by an employee in a traffic accident occurs 'in the course of' and 'arise[s] out of' the employment relationship so as to constitute a compensable injury under R.C. 4123.01(C). 'As a general rule, an employee with a fixed place of employment, who is injured while traveling to or from his place of employment, is not entitled to participate in the Workers' Compensation Fund because the requisite causal connection between the injury and the employment does not exist.'" *Ruckman v. Cubby Drilling, Inc.* (1998), 81 Ohio St.3d 117, 119, 689 N.E.2d 917, quoting *MTD Products, Inc. v. Robatin* (1991), 61 Ohio St.3d 66, 68, 572 N.E.2d 661.

{¶ 15} "In determining whether an employee is a fixed-situs employee and therefore within the coming-and-going rule, the focus is on whether the employee commences his or her substantial employment duties only after arriving at a specific and identifiable work place designated by his employer. That focus remains the same even though the employee may be reassigned to a different work place monthly, weekly, or even daily. Despite periodic relocation of job sites, each particular job site may constitute a fixed place of employment."

*Ruckman,* supra, at paragraph one of the syllabus; *Cartwright v. Conrad,* Montgomery App. No. 20710, 2005-Ohio-4198, 2005 WL 1939823, ¶ 12–16. Janicki claims that the trial court erred in concluding that she was a fixed-situs employee, because her employment with Kforce was not at a fixed location. She notes that Kforce has numerous hospital, nursing-home, outpatient medical-facility, and physician clients in the Dayton area, as well as two offices in Dayton. She further notes that Kforce assigns its nurses to perform its duties at the client's location. Janicki states: "It was the practice of Kforce to assign nurses to more than one facility and Kforce reserved the right to assign a nurse wherever it determined was appropriate."

{¶ 16} While Janicki focuses on Kforce's ability to assign nurses to various locations, we look at Janicki's employment with Kforce to determine whether she was a fixed-situs employee. It is undisputed that Janicki was assigned to work in the emergency room at Good Samaritan Hospital between 3:00 p.m. and 11:00 p.m. on Fridays and that her duties did not begin until she reached the hospital. Moreover, Janicki acknowledged that she performed nursing duties as a Kforce employee only at Good Samaritan. There is no evidence that Janicki traveled to multiple job locations on a given day. We find no question that Good Samaritan Hospital was a "specific and identifiable work place" designated by Janicki's employer, Kforce. Accordingly, the trial court did not err in concluding, as a matter of law, that Janicki was a fixed-situs employee who was subject to the coming-and-going rule.

{¶ 17} The first assignment of error is overruled.

■■ {¶ 18} Next, Janicki asserts that the trial court erred in applying the coming-and-going rule to her. The Supreme Court of Ohio has recognized that there are "rare circumstances" where, despite being classified as a fixed-situs employee, an employee can nevertheless demonstrate that she received an injury in the course of and arising out of her employment while traveling to or from work. *Ruckman,* 81 Ohio St.3d at 120, 689 N.E.2d 917. In general, an employee's commute to a fixed work site is not within the course of employment because "[i]n the normal context, an employee's commute * * * bears no mean-ingful relation to his employment contract and serves no purpose of the employ-er's business." Id. at 121, 689 N.E.2d 917. "That is not the case, however, where, as here, the employee travels to the premises of one of his employer's customers to satisfy a business obligation." Id.

{¶ 19} As for the "arising out of" element of R.C. 4123.01(C), the Supreme Court has identified three limited tests for determining whether the required causal connection exists: (1) the zone-of-employment exception, (2) the special-hazard exception, and (3) the totality-of-the-circumstances exception. *MTD Products, Inc.,* supra; *Ruckman,* supra.

■ {¶ 20} The zone-of-employment exception renders an injury compensable if it occurred within the zone of employment. *MTD Products, Inc.*, 61 Ohio St.3d at 69, 572 N.E.2d 661. "Zone of employment" was defined in *Merz v. Indus. Comm.* (1938), 134 Ohio St. 36, 39, 11 O.O. 414, 15 N.E.2d 632, as "the place of employment and the area thereabout, including the means of ingress thereto and egress therefrom, under control of the employer."

■ {¶ 21} The special-hazard rule allows an employee to collect workers' compensation benefits when the employment creates a special hazard and the employee's injury results from that hazard. *MTD Products, Inc.*, 61 Ohio St.3d at 68, 572 N.E.2d 661; *Powers v. Frank Z Chevrolet* (1995), 100 Ohio App.3d 718, 721, 654 N.E.2d 1053. The rule applies where "(1) 'but for' the employment, the employee would not have been at the location where the injury occurred, and (2) the risk is distinctive in nature or quantitatively greater than the risk common to the public." Id.

■ {¶ 22} The totality-of-the-circumstances test requires "primary analysis of the following facts and circumstances: '(1) proximity of the scene of the accident to the place of employment, (2) the degree of control the employer had over the scene of the accident, and (3) the benefit the employer received from the injured employee's presence at the scene of the accident.'" *Ruckman,* 81 Ohio St.3d at 122, 689 N.E.2d 917, quoting *Lord v. Daugherty* (1981), 66 Ohio St.2d 441, 20 O.O.3d 376, 423 N.E.2d 96, syllabus; see *Fisher v. Mayfield,* 49 Ohio St.3d 275, 551 N.E.2d 1271.

{¶ 23} In concluding that Janicki could not overcome the "coming and going" rule, the trial court found that Janicki's injury did not occur in the course of her employment and that she could not meet any of the tests set forth by the Supreme Court. The court initially stated:

{¶ 24} "During her employment with Kforce, the only place the agency sent Appellant to work was Good Samaritan Hospital. Her employment duties began after arriving there. The time (after Appellant's shift ended), place (a public street) and circumstances (the event of being struck by a car while walking from work to her car) do not establish a nexus between Plaintiff's job as a nurse and her injury. The injury is not consistent with nursing. Further, the injury occurred way from the place of employment[;] Kforce did not maintain control of the street where it occurred and received no benefit from Appellant's presence there."

{¶ 25} Addressing the special-hazard exception, the court stated that "being injured by a negligent driver while crossing the street is not a special hazard because it is not distinctive or any greater than that faced by the public

everyday." The court further rejected the contention that Janicki's injury occurred within the zone of her employment, stating:

{¶ 26} "Construing the evidence most strongly in favor of Appellant, reasonable minds can only conclude that Appellant's injury did not occur in the zone of employment. Mr. Hollingsworth, [Kforce's marketing director for Dayton, Lima, and Cincinnati,] established the existence of a policy providing that the nurses should park in the parking garage above level three. The Appellant['s] cho[ice] to park in the lot across the street to avoid paying the attendants in the garage does not recast her zone of employment to an area encompassing Philadelphia [Drive], over which Kforce has no control."

{¶ 27} On appeal, Janicki argues that her situation is governed by *Baughman v. Eaton Corp.* (1980), 62 Ohio St.2d 62, 16 O.O.3d 45, 402 N.E.2d 1201, in which the Supreme Court of Ohio held that it was "unreasonable" to deny workers' compensation to an employee who was hit by an automobile while crossing a public street between the plant entrance and the only employee parking lot then available to him for free. In so holding, the court implicitly found that Baughman had reached his place of employment, within the meaning of the zone-of-employment test, when he entered the parking lot. See *MTD Products, Inc.*, 61 Ohio St.3d at 69, 572 N.E.2d 661; *Powers*, 100 Ohio App.3d at 723, 654 N.E.2d 1053. *Baughman* is silent as to other parking and transportation options available to the injured worker. Although the injury occurred on a public street, the court noted that the employee "could not reach the plant entrance without crossing the public street."

{¶ 28} As summarized by the Eighth District Court of Appeals, the Supreme Court authority thus states that under the zone-of-employment test, "[i]f the area is under the employer's control and the street is the sole access route to the place of employment, the employee is within this 'zone of employment.' *Bralley v. Daugherty* (1980), 61 Ohio St.2d 302, 15 O.O.3d 359, 401 N.E.2d 448. Even if the street is not under the control of the employer, the employee is within the 'zone of employment' if the employee could not reach the plant entrance from the employee parking lot without crossing the public street. *Baughman v. Eaton Corp.* (1980), 62 Ohio St.2d 62, 16 O.O.3d 45, 402 N.E.2d 1201." *Meszaros v. Legal News Publishing Co.* (2000), 138 Ohio App.3d 645, 647, 742 N.E.2d 158.

{¶ 29} Although counsel for Kforce recognized during oral argument that the Supreme Court has not expressly overruled *Baughman,* Kforce asserts that *Baughman* has limited value. As noted by counsel, there has been substantial development in the coming-and-going rule case law since *Baughman* was decided. The special-hazard exception was expressly recognized in *Littlefield v. Pillsbury Co.* (1983), 6 Ohio St.3d 389, 6 OBR 439, 453 N.E.2d 570, and in *Fisher v. Mayfield,* 49 Ohio St.3d 275, 551 N.E.2d 1271, the Supreme Court reaffirmed the

use of the totality-of-the-circumstances test as set forth in *Lord v. Daugherty*, 66 Ohio St.2d 441, 20 O.O.3d 376, 423 N.E.2d 96. Subsequent Supreme Court authority has continued to flesh out those exceptions to the coming-and-going rule.

{¶ 30} With regard to the continued viability of *Baughman*, Kforce points to the Supreme Court's decision in *MTD Products, Inc.* In that case, the employee was rear-ended on a public highway as he waited to turn into his employer's south parking lot, in which he had been assigned a space. The Supreme Court concluded that the employee was not entitled to workers' compensation benefits under any of the exceptions. Discussing the special-hazard exception, the court noted that there was no greater risk to the employee than to the general public. The court concluded that the totality-of-the-circumstances test was not met because MTD did not have control over the scene of the accident—it controlled neither the public street on which the accident occurred nor the negligent driver who caused the accident—and an employee arriving to begin his day's work is not yet performing any service for the benefit of his employer. Addressing the zone-of-employment test, the court likewise held that it was not met. The court noted that, unlike the plaintiff in *Baughman*, the employee had not arrived at his place of employment, and further that, in contrast to *Indus. Comm. v. Barber* (1927), 117 Ohio St. 373, 159 N.E. 363, MTD did not control the street where the accident occurred. In light of the factual distinction between *MTD Products, Inc.*, and *Baughman*, as recognized by the Supreme Court, we do not agree that *MTD Products, Inc.* limits *Baughman's* precedential value.

{¶ 31} In subsequent cases involving injuries to an employee while traveling between the employee's job site and parking location, courts of appeals have focused on the degree of the employer's control over the employee's parking location or, contrastingly, whether the employee chose to be in the area where he or she was injured. See *Gonzalez v. Bur. of Workers' Comp.*, Mahoning App. No. 03MA86, 2004-Ohio-1562, 2004 WL 614996 (discussing cases). The Eighth District Court of Appeals, in particular, has stated that "[i]f the employee is injured on the public street while traveling from a lot not owned or operated by the employer, which the employees were not required to park in, the employee was not injured in the zone of employment." *Meszaros*, 138 Ohio App.3d at 647, 742 N.E.2d 158, citing *Weiss v. Univ. Hosp. of Cleveland* (2000), 137 Ohio App.3d 425, 738 N.E.2d 884. In *Johnston v. Case W. Res. Univ.* (2001), 145 Ohio App.3d 77, 761 N.E.2d 1113, for example, an employee was injured when a truck jumped the curb and hit her as she walked along the sidewalk from her work location to her car, which was parked in a parking garage that was available to her as an employee. The Eighth District concluded that the employee was not in the "zone of employment" because she was not required by her employer to park in the

parking garage, the employee had a choice as to how to travel to and from work, and the employer did not have control over the area in which the employee was injured.

{¶ 32} In *Powers,* an employee was struck while crossing the street on his way to work at a car dealership. The employee had parked on a nearby street because employees were not permitted to park on the sales lots. We concluded that Powers did not satisfy the zone-of-employment test, because, unlike in *Baughman,* he had not reached his employer's premises when he was injured. *Powers,* 100 Ohio App.3d at 723, 654 N.E.2d 1053. We further found no evidence that the dealership had created a special hazard, because Powers was free to find a parking spot that would not have required him to cross Brown Street and he had elected to park in the closest available space.

{¶ 33} In contrast, the Eighth District found that an employee who was struck by a vehicle on a public street was injured within the zone of her employment when she was *required* by her employer to park in a funeral home parking lot across the street from the McDonald's restaurant where she worked and she necessarily had to cross the street in order to get to and from her vehicle. *Shafer v. Tri–Arch 14, Inc.,* Cuyahoga App. No. 85188, 2005-Ohio-2845, 2005 WL 1364840; accord *Meszaros,* 138 Ohio App.3d 645, 742 N.E.2d 158 (employee was injured in zone of employment when he had no choice but to park in the lot paid for and provided by his employer and was injured while walking from the lot to his job site).

{¶ 34} Likewise, in *Custard v. First Natl. Bank* (June 5, 1998), Sandusky App. No. S–97–058, 1998 WL 334217, the Sixth District concluded that an employee who was struck crossing a public street as she returned from lunch was in the zone of employment when she parked in a lot owned by her employer and specifically designated for employees and when she necessarily had to cross the street to return to her workplace.

{¶ 35} In the present case, the record reflects that Janicki had several choices as to where to park. She acknowledged in her deposition that the hospital had an attached multistory parking garage, which was available to employees and the public. Janicki and Hollingsworth indicated that nurses working at the hospital were directed to park above the third parking level. Janicki further testified, however, that employees were required to pay to park in the garage when attendants were present at the gates. Janicki testified that she had originally parked in the garage when her shift ended after the gates were no longer manned, but that she began to park elsewhere when she was required to pay to park in the garage.

{¶ 36} In addition to the attached parking garage, Janicki and Hollingsworth both testified that Good Samaritan had an employee parking lot, in which it was

appropriate for Kforce nurses to park. Janicki stated that the employee parking lot was available free of charge. Janicki also acknowledged that she could have availed herself of street parking or that she could have taken public transportation, but opted not to do so for reasons of safety and convenience.

{¶ 37} At the time of the accident, Janicki had parked in the employee parking lot provided by Good Samaritan for its employees free of charge. In order to reach the parking lot from the hospital, Janicki and other employees necessarily crossed Philadelphia Drive. It is undisputed that Janicki had just completed her shift and was proceeding directly to her vehicle when she was struck on the public street.

{¶ 38} Despite the alternatives available to Janicki, we are compelled to find that Janicki's circumstances are analogous to *Baughman*. As an employee parking lot provided by Good Samaritan for its employees free of charge, the parking lot in which Janicki parked was within the zone of her employment as a contract worker assigned to that hospital. See *Krovosucky v. Indus. Comm.* (1943), 74 Ohio App. 86, 57 N.E.2d 607 (parking lot, which was separated from the work site by a highway, was within zone of employment), cited with approval by *Marlow v. Goodyear Tire & Rubber Co.* (1967), 10 Ohio St.2d 18, 39 O.O.2d 11, 225 N.E.2d 241. In *Baughman*, the Supreme Court implicitly held that the public road separating that parking lot from the work site is also within the zone of employment. Although Janicki was not required to park at the parking lot in question and she had other available parking and transportation options, these facts are not legally significant in light of *Baughman*. The fact remains that Janicki did, in fact, park in an employee-only lot provided by the hospital for her use free of charge. Moreover, the fact that Janicki chose to park in the employee parking lot rather than the hospital parking garage, where employee parking was also provided, does not remove the parking lot—and the public street she necessarily had to cross in order to reach the hospital—from the zone of employment. Accordingly, the trial court erred in granting summary judgment to Kforce and to the Administrator on the ground that Janicki could not overcome the coming-and-going rule under the zone-of-employment test.

{¶ 39} The second assignment of error is sustained.

{¶ 40} The judgment of the trial court is reversed, and the matter is remanded for further proceedings.

*Judgment accordingly.*

GRADY, P.J., and WALTERS, J., concur.

SUMNER E. WALTERS, J., retired, of the Third Appellate District, sitting by assignment.