[Cite as *Buck v. Melco, Inc.*, 185 Ohio App.3d 281, 2009-Ohio-6872.]

# IN THE COURT OF APPEALS OF OHIO
## THIRD APPELLATE DISTRICT
## PAULDING COUNTY

BUCK SR.,

    APPELLEE,                                CASE NO. 11-09-06

    v.

MELCO, INCORPORATED,

    APPELLANT;

                                            **O P I N I O N**

ADMINISTATOR, BUREAU OF
WORKERS' COMPENSATION,

    APPELLEE.

---

**Appeal from Paulding County Common Pleas Court**
**Trial Court No. CI-08-189**

**Judgment Affirmed in Part, Reversed in Part and Cause Remanded**

**Date of Decision:  December 28, 2009**

---

**APPEARANCES:**

    Thomas R. Sant, for appellant.

    Martha Joyce Wilson, for appellee.

**SHAW, Judge.**

**{¶1}** Defendant-appellant, Melco, Inc. ("Melco"), appeals the June 5, 2009 judgment entry of the Paulding County Common Pleas Court granting summary judgment in favor of plaintiff-appellee, Dennis Buck, finding that Buck's injury occurred in the course of and arose out of his employment with Melco.

**{¶2}** The facts relevant to this appeal are as follows. Buck was employed by Melco as a heavy-equipment operator. In September 2005, he was hired to do excavation at the Auglaize Quarry in Paulding County. This jobsite was located approximately 70 miles from Buck's home in Toledo. Buck customarily left his home early to ensure that he arrived at the site on time. His shift was scheduled to begin at 7:00 a.m. However, it was customary for the employees to enter the quarry at 6:30 a.m., when the foreman arrived, to start the machines and be ready to perform promptly at 7:00 a.m.

**{¶3}** On October 5, 2006, Buck arrived at the Auglaize Quarry at approximately 5:30 a.m. He parked his truck near the gate of the quarry where Melco instructed its employees to park. Sometime between 5:45 a.m. and 6:00 a.m., the following series of events took place. Buck exited his vehicle to use the port-a-john located adjacent to the designated parking area. As he left the port-a-john to return to his vehicle, he was accosted by three men demanding money. An altercation ensued and Buck was severely beaten. During the struggle, Buck

sustained an injury to his shoulder and received lacerations on his face and forearm from a switchblade knife used by one of the men. The men then robbed Buck and left the site in a pickup truck. About ten minutes after the assault, some of Buck's co-workers arrived on the scene and assisted him. The foreman arrived at approximately 6:30 a.m. and called law enforcement, who came to the scene and prepared an incident report. Buck was admitted to the Paulding County Hospital where the incident was documented and his injury was diagnosed as a left shoulder contusion.

{¶4} Buck filed an application with the Bureau of Workers' Compensation and with the Industrial Commission of the State of Ohio for an injury sustained in the course of and arising out of his employment with Melco. Both the district hearing officer and the staff hearing officer for the Industrial Commission allowed the claim, concluding that the injury occurred in the course of and arose out of Buck's employment. Melco appealed to the Industrial Commission, which refused to consider further appeal. Melco then appealed to the Paulding County Court of Common Pleas pursuant to R.C. 4123.512.

{¶5} The parties did not dispute the causal relationship between the assault and Buck's injured shoulder. The parties also entered a stipulation of facts with several exhibits attached, including the incident report completed by law enforcement. The only issue on appeal before the trial court was whether Buck's

injury occurred within the course of and arising out of his employment with Melco. The parties filed cross motions for summary judgment.

{¶6} On June 5, 2009, the trial court granted Buck's motion for summary judgment, finding that the injury was compensable, and consequently denied Melco's motion for summary judgment.

{¶7} Melco now appeals, asserting a single assignment of error.

The trial court erred in sustaining plaintiff-appellee's motion for summary judgment and overruling defendant-appellant's motion for summary judgment.

{¶8} When reviewing a summary-judgment ruling made by a court of common pleas from an appeal of a decision by the Industrial Commission, an appellate court applies the same standard used to review any other summary-judgment ruling. *Conley-Slowinski v. Superior Spinning & Stamping Co.* (1998), 128 Ohio App.3d 360, 363, 714 N.E.2d 991. The appellate court review of summary judgment is made independently and without any deference to the trial court. The standard of review for a grant of summary judgment is de novo. *Hasenfratz v. Warnement*, 3rd Dist. No. 1-06-03, 2006-Ohio-2797, citing *Lorain Natl. Bank v. Saratoga Apts.* (1989), 61 Ohio App.3d 127, 572 N.E.2d 198.

{¶9} A grant of summary judgment will be affirmed only when the requirements of Civ.R.56(C) are met. This requires the moving party to establish (1) that there are no genuine issues of material fact, (2) that the moving party is entitled to judgment as a matter of law, and (3) that reasonable minds can come to

but one conclusion and that conclusion is adverse to the nonmoving party, who is entitled to have the evidence construed most strongly in his favor. Civ.R.56(C); see *Horton v. Harwick Chem. Corp.* (1995), 73 Ohio St.3d 679, 653 N.E.2d 1196, paragraph three of the syllabus. Additionally, Civ.R.56(C) mandates that summary judgment shall be rendered if the pleadings, depositions, answers to interrogatories, written admissions, affidavits, transcripts of evidence, and written stipulations of fact show that there is no genuine issue as to any material fact and that the moving party is entitled to judgment as a matter of law.

{¶10} In ruling on a summary-judgment motion, a court is not permitted to weigh evidence or choose among reasonable inferences; rather, the court must evaluate evidence, taking all permissible inferences and resolving questions of credibility in favor of the nonmoving party. *Jacobs v. Racevskis* (1995), 105 Ohio App.3d 1, 7, 663 N.E.2d 653.

{¶11} In the sole issue on appeal, Melco argues that the trial court incorrectly applied the law to the facts of this case when it granted Buck's motion for summary judgment. Specifically, Melco asserts that Buck's injuries did not occur "in the course of" and "arising out of" his employment with Melco. R.C. 4123.01(C) defines a compensable injury under the Worker's Compensation Act as the following:

> "Injury" includes any injury, whether caused by external accidental means or accidental in character and result, received in the course of, and arising out of, the injured employee's employment.

{¶12} In order to participate in the state worker's compensation fund, the employee must prove that the injury occurred while "in the course of" and "arising out of" the injured employee's employment. *Bralley v. Daugherty* (1980), 61 Ohio St.2d 302, 303, 401 N.E.2d 448. These two prongs are conjunctive, requiring both to be satisfied before compensation is allowed. *Fisher v. Mayfield* (1990), 49 Ohio St.3d 275, 277, 551 N.E.2d 1271. In applying this test, the primary inquiry is "whether a 'causal connection' existed between an employee's injury and his employment either through the activities, the conditions or the environment of the employment." *Bralley*, 61 Ohio St.2d at 303. Moreover, as a general rule, the worker's compensation statute must be liberally construed in favor of the employee. R.C. 4123.95; *Fisher*, 49 Ohio St.3d at 278.

{¶13} To facilitate an analysis of the first prong, the Supreme Court of Ohio summarized "in the course of" employment in the following manner:

> The phrase "in the course of employment" limits compensable injuries to those sustained by an employee while performing a required duty in the employer's service. "To be entitled to workmen's compensation, a workman need not necessarily be injured in the actual performance of work for his employer." *Sebek v. Cleveland Graphite Bronze Co.* (1947), 148 Ohio St. 693, 36 O.O. 282, 76 N.E.2d 892, paragraph three of the syllabus. An injury is compensable if it is sustained by an employee while that employee engages in activity that is consistent with the contract for hire and logically related to the employer's business.

(Citations omitted.) *Ruckman v. Cubby Drilling, Inc.* (1998), 81 Ohio St.3d 117, 120, 689 N.E.2d 917.

{¶14} An assessment of this prong requires a consideration of factors such as "time, place, and circumstances" of the injury to determine the existence of a nexus between the employment and the activity causing the injury. *Fisher*, 49 Ohio St.3d at 277.

{¶15} The second prong, "arising out of," contemplates a determination as to whether a sufficient causal connection between the injury and the employment exists to warrant compensation. Id. The analysis under this prong requires a totality-of-the-circumstances review of the incident. The Supreme Court of Ohio put forth a framework of three basic factors to assist a court in determining whether an injury arose out of the employee's employment:

> 1) the proximity of the scene of the accident to the place of employment; 2) the degree of control the employer had over the scene of the accident; and 3) the benefit the employer received from the injured employee's presence at the scene of the accident.

*Lord v. Daugherty* (1981), 66 Ohio St.2d 441, 444, 423 N.E.2d 96. Because worker's compensation cases are intensely fact specific, a flexible and analytically sound approach is preferable to rigid rules that can lead to unsound and unfair results. *Fisher*, 49 Ohio St.3d at 280.

{¶16} In applying the above two-pronged test to the instant case, Melco, in its brief and in oral argument, urges this court to find that Buck was not engaged in an activity required by his employment and did not serve any benefit to Melco

because the injury occurred more than an hour prior to the scheduled commencement of Buck's workday.

{¶17} Based on the parties' stipulation and their respective motions for summary judgment with attached exhibits, the following facts emerge concerning Buck's arrival time. Buck commuted 70 miles each day to the quarry, a site he reported to daily for over a year. Other Melco employees noted that Buck was typically the first employee to arrive at the site and that Buck parked his vehicle in the same space each day in the area designated for Melco employees. Also, it was *customary* for employees to arrive at least 30 minutes before the start of the 7:00 a.m. shift to allow the machine operators to enter the quarry to warm up the machines at 6:30 a.m. Moreover, on the day of the incident at issue, other Melco employees arrived only minutes after the assault occurred.

{¶18} When applying these facts to the two-pronged test to this case, it is apparent that a number of genuine issues of material fact remain unanswered in the record. For example, the "in course of" element is satisfied if the worker is injured in the pursuit or undertaking consistent with the contract of hire and that in some logical manner pertains to or is incidental to the employment. *Ruckman*, 81 Ohio St.3d at 120. Therefore, an essential inquiry is whether Buck's early arrival placed him outside the course of his employment with Melco.

{¶19} In this case, despite the parties' stipulated use of the word "customary," it is unclear whether Melco employees voluntarily arrived at least 30

minutes prior to their shift or whether early arrival to prepare the machines was a required duty of their employment. Therefore, it cannot be readily ascertained from the term "customary" whether some employees were "encouraged" or "expected" by Melco to arrive early and perform preparatory activities—or whether the practice of early arrival was purely voluntary for the convenience or benefit of the employees as opposed to the convenience or benefit of Melco.

{¶20} In addition, the arrival of Buck's co-workers shortly after the assault indicates that Buck's early arrival was perhaps not an atypical practice among Melco employees. However, even if an early arrival was not "required" by Melco, the fact that other Melco employees, including the site foreman, were aware that Buck was consistently the first to arrive at the site raises the issue whether Melco acquiesced to Buck's early arrival to the site by not protesting the daily occurrence over a year's time. Simply put, we believe the fact of Buck's "customary" early arrival at the jobsite, standing alone, is an insufficient basis for a determination as a matter of law that Buck was "within the course of" his employment at the time of the assault. On the contrary, a more complete resolution of the factual circumstances surrounding the employees' early arrivals is essential in determining whether the timing of Buck's arrival at the jobsite was consistent with his contract for hire and logically related to his employment with Melco, and thus whether Buck was indeed in the course of his employment when his injury occurred.

**{¶21}** Similarly, the issue of Buck's early arrival to the jobsite also raises issues of material fact with regard to the "arising out of" portion of our analysis. Specifically, issues arise with regard to the third factor of *Lord*, i.e., assessing whether Melco received a benefit from Buck's presence at the scene. Clearly, neither party disputes that having the machine operators onsite 30 minutes before the shift begins to prepare the equipment for excavation provides a distinct benefit to Melco.

**{¶22}** The parties stipulated that Buck's practice of arriving early stemmed from the fact that he commuted 70 miles each day and therefore left his home early to ensure he arrived to the jobsite on time. On one hand, it is difficult to imagine that Buck reaped any personal benefit from his presence at a quarry located off of a rural county road at 5:45 a.m. other than to ensure that he arrived to his place of employment on time. Moreover, ensuring that he arrived on time benefited his employer by having an employee readily available when the foreman arrived. On the other hand, a question naturally arises as to whether, under the totality of circumstances and employer expectations, an employee's presence a full one and a half hour before the formal 7:00 a.m. start time still falls within the "benefit the employer received" language of *Lord*. In view of the various facts discussed above concerning the known and customary practices of the employees in this case, resolution of this question is likewise not particularly susceptible to a determination as a matter of law.

{¶23} The remaining two considerations under the *Lord* test involve the proximity of the scene of the incident to the place of employment and the degree of control the employer had over the scene. Once again, the parties' factual stipulations to certain facts are generally unhelpful in applying the *Lord* analysis to this case because none of the stipulated facts appear to address either of these considerations.

{¶24} For example, as to the factor of proximity between the parking area where the assault occurred and the quarry, there is no indication exactly how close the two locations were to one another. Moreover, a review of the record before us reveals inconsistent facts concerning Melco's control over the scene. The quarry was wholly owned by a customer of Melco's. Melco also denies it exerted any control over the premises where the assault occurred, an assertion that is primarily based on the fact that the parking area was located off a county road that was accessible to the general public. However, Buck's injury occurred in the area where he and other employees were instructed to park by Melco each day for the entire year Melco had been conducting business at the quarry. Notably, both parties assert that Melco's control, or absence thereof, is determinative in supporting their respective arguments for granting or denying compensation to Buck.

{¶25} Nevertheless, questions still remain regarding the nature of the area where Buck was injured. When interviewed by law enforcement, the site foreman,

Eric Sneigowski, stated that all Melco employees met at the site prior to beginning their shift. However, beyond being a place to park and a staging site to gather the crew prior to commencing the shift, there is no information in the record as to the nature of this area as it relates to the day-to-day activities at the jobsite. As a result, despite both parties' assertions that no genuine issues of material fact remain, the facts necessary to determine whether Melco exerted any control over the injury site, and if so to what degree, are not in the record.

{¶26} The degree of control Melco had over the premises where the injury occurred is crucial in another respect. It supplies an alternate theory of compensation under the "zone of employment" rule. Both parties rely on this alternative theory of compensability to bolster their respective motions for summary judgment. Generally, an employee with a fixed place of employment, who is injured while travelling to and from the place of employment, is not entitled to compensation under the worker's compensation fund because there is no causal connection between the injury and employment. *MTD Prods., Inc. v. Robatin* (1991), 61 Ohio St.3d 66, 68, 572 N.E.2d 661. However, there is an exception to the general rule barring compensation when an injury occurs in the zone of employment.

{¶27} The zone of employment is defined as "the place of employment and the area thereabout, including the means of ingress thereto and egress therefrom, *under the control of the employer.*" (Emphasis added.) *Janicki v. Kforce.com*,

167 Ohio App. 3d 572, 579, 2006-Ohio-3370, 855 N.E.2d 1282. The concept of the zone of employment has been further clarified through case law in situations similar to this one when an employee's injury occurred in an area used by the public, but the premises in question was the only point of access to the place of employment.

> If the area is under the employer's control and the street is the sole access route to the place of employment, the employee is within this "zone of employment." *Bralley v. Daugherty* (1980*)*, 61 Ohio St.2d 302. Furthermore, even if the street is not under the control of the employer, the employee is within the "zone of employment" if the employee could not reach the plant entrance from the employee parking lot without crossing the public street. *Baughman v. Eaton Corp.* (1980), 62 Ohio St.2d 62, 402 N.E.2d 1201.

*Meszaros v. Legal News Publishing* Co. (2000), 138 Ohio App.3d 645, 647, 742 N.E.2d 158.

{¶28} Even though Buck's location of employment was subject to change depending upon where Melco was performing excavation, he is considered a fixed-situs employee and subject to the general rule. See *Ruckman*, 81 Ohio St.3d 117, paragraph one of the syllabus (holding that a fixed-situs employee may be reassigned to a different work place, monthly, weekly, or even daily and despite periodic reassignments of location, each particular jobsite may constitute a fixed location).

{¶29} However, Buck argues that because Melco instructed its employees to park on the premises, it constitutes the "zone of employment" and an injury

occurring within that zone is compensable. On the contrary, Melco maintains that because the premises were accessible to the general public, it was more akin to a public highway and therefore did not constitute the jobsite. Based on this assertion, Melco argues that Buck was still in his commute and en route to the jobsite when he was attacked and therefore subject to the general rule barring compensation.

{¶30} In sum, despite the parties' stipulation to certain facts, we find that there still remain genuine issues of material fact as to all of the foregoing issues that we believe are crucial to the determination of whether this injury was compensable under the law pertaining to workers compensation.

{¶31} Based on the foregoing, we find summary judgment to be inappropriate for either party in this case. Therefore, the June 5, 2009 judgment entry of the Paulding Court of Common Pleas granting Buck's motion for summary judgment is reversed. However, the decision of the trial court to deny summary judgment on the part of Melco is affirmed. To the same extent, the assignment of error is sustained as to the summary judgment awarded to Buck and overruled as to the denial of summary judgment for Melco, and the matter is remanded to the trial court for further proceedings consistent with this opinion.

Judgment affirmed in part
and reversed in part,
and cause remanded.

PRESTON, P.J., and ROGERS, J., concurs.