[Cite as *Foster v. Bur. of Workers' Comp.*, 2013-Ohio-4075.]

# IN THE COURT OF APPEALS OF OHIO
## SECOND APPELLATE DISTRICT
## MONTGOMERY   COUNTY

| | | |
|---|---|---|
| MELISSA J. FOSTER | : | |
| | : | Appellate Case No. 25657 |
| Plaintiff-Appellant | : | |
| | : | Trial Court Case No. 12-CV-2248 |
| v. | : | |
| | : | |
| BUREAU OF WORKERS' | : | (Civil Appeal from |
| COMPENSATION, et al. | : |  Common Pleas Court) |
| | : | |
| Defendant-Appellee | : | |
| | : | |

. . . . . . . . . . .

O P I N I O N

Rendered on the 20th day of September, 2013.

. . . . . . . . . . .

ARTHUR C. GRAVES, Atty. Reg. #0031027, 2929 Kenny Road, Suite 295, Columbus, Ohio 43221
      Attorneys for Plaintiff-Appellant, Melissa J. Foster

RANDALL W. MIKES, Atty. Reg. #046945, and DAVID M. McCARTY, Atty. Reg. #0059539, Kegler, Brown, Hill & Ritter, 65 East State Street, Suite 1800, Columbus, Ohio 43215
      Attorneys for Defendant-Appellee, Bridge Homecare Partners, LLC

LYDIA M. ARKO, Atty. Reg. #0085597, Attorney General's Office, Workers' Compensation Section, 150 East Gay Street, 22nd Floor, Columbus, Ohio 43215
      Attorney for Defendant-Appellee, Bureau of Workers' Compensation

. . . . . . . . . . . . .

HALL, J.,

{¶ 1}   Melissa J. Foster appeals from the trial court's decision, order, and entry sustaining a motion for summary judgment against her in this workers' compensation appeal.

{¶ 2}   In her sole assignment of error, Foster contends the trial court erred in upholding an administrative finding that she was not entitled to workers' compensation benefits.

{¶ 3}   The record reflects that Foster worked as a quality-assurance supervisor for appellee Bridge Home Health Care Partners ("Bridge"). She had a fixed place of employment in office space leased by Bridge. The office building, located at 5335 Far Hills Avenue, was shared by several tenants. Parking areas surrounded the building, and parking was neither restricted nor assigned. Foster typically chose to park in a marked space along an access road in front of the building. On the day in question, she arrived for work and parked as usual. After exiting her car, she slipped and fell on snow-covered ice. The fall resulted in a fractured vertebrae and required surgery.

{¶ 4}   Foster filed a workers' compensation claim as a result of the injury. The Industrial Commission denied the claim. Foster appealed to the trial court, which upheld the administrative ruling. The trial court reasoned that workers' compensation coverage was precluded for Foster, a fixed-situs employee, under the coming-and-going rule and that no exceptions applied. Therefore, the trial court entered summary judgment against her.

{¶ 5}   On appeal, Foster maintains "that an employee injured in a parking lot immediately adjacent to the employer's work premises is injured in the course of and arising out of her employment." She additionally asserts that Bridge's lack of ownership of the area where she parked is not dispositive. She notes that Bridge did not own its office space either. According to Foster, Bridge provided parking for its employees. Although the lease made the landlord

responsible for maintaining "parking areas," Foster contends this fact "should not deprive an injured worker of a valid injury claim while falling in a parking lot furnished by the employer." Finally, she cites three cases that she claims support finding a compensable injury, *Meszaros v. Legal News Publishing Co.*, 138 Ohio App.3d 645, 742 N.E.2d 158 (8th Dist.2000), *Jesse v. May Dept. Stores Co*, 11th Dist. Lake No. 2003-L-064, 2004-Ohio-5313, and *Stair v. Mid Ohio Home Health, Ltd.*, 5th Dist. Richland No. 2010-CA-0114, 2011-Ohio-2351.

{¶ 6} We review a grant of summary judgment de novo, which means that "we apply the standards used by the trial court." *Brinkman v. Doughty*, 140 Ohio App.3d 494, 497, 748 N.E.2d 116 (2d Dist.2000). Summary judgment is appropriate when a trial court correctly finds "(1) that there is no genuine issue as to any material fact; (2) that the moving party is entitled to judgment as a matter of law; and (3) that reasonable minds can come to but one conclusion, and that conclusion is adverse to the party against whom the motion for summary judgment is made, who is entitled to have the evidence construed most strongly in his favor." *Harless v. Willis Day Warehousing Co.*, 54 Ohio St.2d 64, 66, 375 N.E.2d 46 (1978).

{¶ 7} We see no error in the trial court's summary-judgment ruling. "In Ohio, 'an injury sustained by an employee is compensable under the Workers' Compensation Act only if it was received in the course of, and arising out of, the injured employee's employment.'" *Kershner v. High Point Home Health, Ltd.*, 2d Dist. Miami No. 2012-CA-26, 2013-Ohio-1370, ¶12, quoting *Fisher v. Mayfield*, 49 Ohio St.3d 275, 276-277, 551 N.E.2d 1271 (1990). "The coming-and-going rule * * * is one used in determining whether an injury occurs 'in the course of, and arising out of, employment.'" *Id.* at ¶13, quoting *MTD Prods., Inc. v. Robatin*, 61 Ohio St.3d 66, 68, 572 N.E.2d 661 (1991).The rule generally precludes workers' compensation

coverage for a fixed-situs employee who is injured while traveling to or from her place of employment because no causal connection between the injury and the employment exists. *Id.*, quoting *Mitchell v. Cambridge Home Health Care, Inc./PRI*, 9th Dist. Summit No. 24163, 2008-Ohio-4558, ¶ 9.

{¶ 8} Here Foster does not appear to dispute that she was a fixed-situs employee, a conclusion supported by the uncontroverted facts. Foster's regular workplace was Bridge's leased office space, and her employment duties typically commenced only after her arrival at that designated location. *See Kershner* at ¶13. At the time of her fall, Foster admittedly had not yet commenced her employment duties. (*See* Foster depo. at 42.) Therefore, the trial court correctly found the coming-and-going rule applicable.

{¶ 9} The real issue before us is whether any exception to the rule applies. This court reviewed the possible exceptions in *Janicki v. Kforce.Com, Inc.*, 167 Ohio App.3d 572, 2006-Ohio-3370, 855 N.E.2d 1282 (2d Dist.), as follows:

> * * * [T]he Supreme Court has identified three limited tests for determining whether the required causal connection [between an injury and employment] exists: (1) the zone-of-employment exception, (2) the special-hazard exception, and (3) the totality-of-the-circumstances exception. * * *
>
> The zone-of-employment exception renders an injury compensable if it occurred within the zone of employment. *MTD Products, Inc. [v. Robatin ]*, 61 Ohio St.3d [66,] 69, 572 N.E.2d 661 [(1991)]. "Zone of employment" was defined in *Merz v. Indus. Comm*. (1938), 134 Ohio St. 36, 39, 11 O.O. 414, 15 N.E.2d 632, as "the place of employment and the area thereabout, including the means of

ingress thereto and egress therefrom, under control of the employer."

The special-hazard rule allows an employee to collect workers' compensation benefits when the employment creates a special hazard and the employee's injury results from that hazard. *MTD Products, Inc.*, 61 Ohio St.3d at 68, 572 N.E.2d 661; *Powers v. Frank Z Chevrolet* (1995), 100 Ohio App.3d 718, 721, 654 N.E.2d 1053. The rule applies where "(1) 'but for' the employment, the employee would not have been at the location where the injury occurred, and (2) the risk is distinctive in nature or quantitatively greater than the risk common to the public." *Id.*

The totality-of-the-circumstances test requires "primary analysis of the following facts and circumstances: '(1) proximity of the scene of the accident to the place of employment, (2) the degree of control the employer had over the scene of the accident, and (3) the benefit the employer received from the injured employee's presence at the scene of the accident.'" *Ruckman [v. Cubby Drilling, Inc.]*, 81 Ohio St.3d [117,] 122, 689 N.E.2d 917 [(1998)], quoting *Lord v. Daugherty* (1981), 66 Ohio St.2d 441, 20 O.O.3d 376, 423 N.E.2d 96, syllabus; *see Fisher v. Mayfield*, 49 Ohio St.3d 275, 551 N.E.2d 1271 [(1990)].

*Janicki* at ¶19-22.

{¶ 10} The trial court addressed the foregoing exceptions and found them inapplicable. We agree. As set forth above, an employee's zone of employment includes "the place of employment and the area thereabout * * * under control of the employer." *Id.* at ¶20. Not surprisingly, then, "[a] finding that the employer exercised control over the area in which the

incident occurred is a significant factor in establishing whether the employee was within the 'zone of employment.'" (Citations omitted.) *Jobe v. Conrad*, 2d Dist. Montgomery No. 18459, 2001 WL 62516, *3 (Jan. 26, 2001). "Black's Law Dictionary defines 'control' as '[t]he direct or indirect power to direct the management and policies of a person or entity * * *.' Black's Law Dictionary (7Ed.1999) 330. 'Control' connotes not only an opportunity to correct the defect but also the responsibility to do so." *Id.* "Control presumes an actual power, not the potential of obtaining it." *Id.* at *4.

{¶ 11} The location where Foster fell was not under Bridge's control. She fell in a parking space along an access road in front of Bridge's leased office space. Parking there along the side of the road was available to anyone on a first-come, first-served basis. (Foster depo. at 46). Bridge did not instruct Foster to park along the access road, and there were other parking areas available all around the building. (*Id.* at 44, 86-87). The record reflects that Bridge's employees enjoyed a non-exclusive right to use the parking spaces along the access road, as did other tenants and the public at large. Even assuming, arguendo, that such on-street parking could be subject to private control, the entity controlling it would have been Bridge's landlord, Financial South Office Partners ("Financial South"). The terms of the lease between Bridge and Financial South provided for the landlord to maintain all parking areas. The record contains no evidence indicating that Bridge had control over the access road where Foster parked. It simply shared use of the access-road parking with other tenants and the public.

{¶ 12} With regard to Foster's specific arguments, we agree that Bridge's lack of ownership of the area where she parked is not dispositive. The issue under the zone-of-employment test is control, not ownership. The problem for Foster is that Bridge lacked

control over the access-road parking, which was available to anyone.

{¶ 13}   Foster also suggests that Bridge could have negotiated with Financial South and obtained control over the access-road parking. She reasons that Bridge should not be rewarded for failing to do so. This court rejected a similar argument in *Jobe*, noting that "[c]ontrol presumes an actual power, not the potential of obtaining it." *Jobe* at *4.

{¶ 14}   Finally, the case law on which Foster relies is distinguishable. In *Meszaros*, the employer assigned the plaintiff a parking space in a lot it leased from a church. The employer directed the plaintiff to use one of two routes to get from the parking lot to the employer's business. The plaintiff was injured while using one of the routes, the driveway of another business. Although the employer did not control this driveway, the Eighth District found it within the zone of employment because the employer required the plaintiff to use it, or the other available route, to travel from the employer-controlled parking lot, where the plaintiff was forced to park, to the employer's business. In reaching this conclusion, the majority relied on the limited access to the employer's business as a result of its required parking area and the fact that the plaintiff had reached the employer's premises, the leased parking lot, prior to his injury. The facts of the present case bear little similarity to *Meszaros*. Bridge did not require Foster to park in any particular place, and there were several ways to access the office building. In addition, Foster had not yet reached Bridge's premises at the time of her injury because the location where she parked was not under Bridge's control. Therefore, the rationale underlying *Meszaros* does not apply.

{¶ 15}   In *Jesse*, the plaintiff fell in the parking lot of a shopping mall where she worked. The employer operated a store in leased space inside the mall. Although the mall maintained the parking lot, the employer "exercised a great deal of control over [the plaintiff] and the area of the

parking lot where she fell." *Jesse,* 2004-Ohio-5313, at ¶20. In particular, the employer paid for the parking lot on a pro rata basis as part of its lease. The employer told the plaintiff where to park, thereby controlling who could use the spaces, and which entrance to its premises to use. Under these circumstances, in a 2 to 1 decision, the Eleventh District found that the plaintiff's injury occurred in her zone of employment. The facts of the present case bear little resemblance to *Jesse*. There is no evidence that Bridge controlled who could use the access-road parking spaces. Bridge also did not tell Foster where to park or where to enter the office building. The elements of control that the majority referred to in *Jesse* are absent.

{¶ 16} In *Stair*, the plaintiff fell on ice in a parking in front of her employer's office. The plaintiff was required to use the parking lot when she visited the office. On most days, however, she traveled from her home to the homes of her clients, where she performed home health care. The plaintiff was required to visit the office to drop off paperwork and to pick up paychecks. On the day of her fall, the plaintiff parked in the parking lot, picked up her paycheck, and was assigned another client to see that day. While leaving the office, she fell and injured herself. The Fifth District concluded that the plaintiff was not a fixed-situs employee to whom the coming-and-going rule applied. In finding the plaintiff eligible for workers' compensation benefits, the appellate court also noted that the plaintiff was picking up her paycheck as required by the employer, that she was being paid for her time when she was injured, that her workday was not finished, and that her presence at the office benefitted the employer. The facts of the present case bear little similarity to *Stair*. Foster was a fixed-situs employee to whom the coming-and-going rule did apply, she was not required to park on the access road or in any other particular place, and her work day admittedly had not started when she fell. Therefore, we find

*Stair* distinguishable.

{¶ 17}  As noted in Bridge's appellate brief, a more analogous case is *Thephasith v. Automotive Specialty Co. Div*., 10th Dist. Franklin No. 00AP-415, 2000 WL 1715856 (Nov. 16, 2000). There the plaintiff was injured while walking to his car after work. The injury occurred in a parking lot owned by the employer's landlord. The lease between the landlord and the employer gave the employer a non-exclusive right to use the parking lot and required the landlord to maintain it. Under these circumstances, the Tenth District found worker's compensation benefits not available. It reasoned:

> In the present case, appellee presented evidence that it did not own, maintain, or have control over the parking lot where appellant was injured. Appellee also presented evidence that appellant was not engaged in any activities relating to his employment except for the fact that he was walking to his car at the end of his workday. We find that these facts sufficiently establish that appellant was not within the "zone of employment" when he was injured, and, therefore, he is not eligible for benefits pursuant to the "zone of employment" test.

*Id.* at *3.

{¶ 18}  As in *Thephasith*, Bridge did not own, maintain, or control the access-road parking area where Foster fell. Bridge's employees had only a non-exclusive right to use the parking area along with other tenants and the public at large. Foster's workday had not yet begun when she fell, and she was not engaged in any activity related to her employment other than simply exiting her car so she could go to work. *Compare Jobe* at *3-4 (finding the plaintiff not within her zone of employment when she fell in a mall walkway outside the entrance to her

employer's store on a paid lunch break because the employer did not have authority or control over the walkway). For the foregoing reasons, we find the zone-of-employment exception to the coming-and-going rule inapplicable.

{¶ 19} The trial court also correctly rejected application of the special-hazard exception. As set forth above, this exception applies only if an employer subjects an employee to some special hazard or risk that "is distinctive in nature or quantitatively greater than the risk common to the public." *Janicki,* 167 Ohio App.3d 572, 2006-Ohio-3370, 855 N.E.2d 1282, at ¶21. Here Foster's risk of falling on an icy spot in a common parking area was not distinctive in nature or quantitatively greater than the risk faced by the general public. *Compare Thephasith* at *3; *Jobe,* 2001 WL 62516, at *4. Nor did Bridge subject Foster to the risk. She was free to park anywhere and chose to park where she did for personal reasons.

{¶ 20} Finally, we see no error in the trial court's rejection of the totality-of-the-circumstances exception to the coming-and-going rule. That exception requires analysis of the proximity of the accident scene to the place of employment, the degree of the employer's control over the scene, and the benefit to the employer from the employee's presence at the scene. *Janicki* at ¶22. Here Foster's fall occurred in relatively close proximity to Bridge's offices. But Bridge neither exercised any control over the access-road parking spaces nor derived any benefit from Foster's decision to park there. Under these facts, the totality-of-the-circumstances exception does not apply. *Compare Thephasith* at *3; *Jobe* at *5.

{¶ 21} Based on the reasoning set forth above, we overrule Foster's assignment of error and affirm the judgment of the Montgomery County Common Pleas Court.

. . . . . . . . . . . . .

FAIN, P.J., and DONOVAN, J., concur.


Copies mailed to:

Arthur C. Graves
Randall W. Mikes
David M. McCarty
Lydia M. Arko
Hon. Michael W. Krumholtz