[Cite as *Garner v. Bur. Workers' Comp.*, 2018-Ohio-3398.]

**IN THE COURT OF APPEALS OF OHIO**
**SECOND APPELLATE DISTRICT**
**MONTGOMERY COUNTY**

| | | |
|---|---|---|
| LEROY GARNER | : | |
| | : | |
| Plaintiff-Appellant | : | Appellate Case No. 27945 |
| | : | |
| v. | : | Trial Court Case No. 2017-CV-2871 |
| | : | |
| BUREAU OF WORKERS' COMPENSATION, et al. | : | (Civil Appeal from Common Pleas Court) |
| | : | |
| Defendant-Appellee | : | |

. . . . . . . . . . .

O P I N I O N

Rendered on the 24th day of August, 2018.

. . . . . . . . . . .

SHAWN M. WOLLAM, Atty. Reg. No. 0078244 and ABIGAIL MARCHISIO, Atty. Reg. No. 0083510, 2323 W. Fifth Avenue, Suite 240, Columbus, Ohio 43204
        Attorney for Plaintiff-Appellant

JACQUELYN MCTIGUE, Atty. Reg. No. 0095961, 150 E. Gay Street, 22nd Floor, Columbus, Ohio 43215
        Attorney for Defendant-Appellee, Ohio Bureau of Workers' Compensation

DAVID C. KORTE, Atty. Reg. No. 0019382, MICHELLE D. BACH, Atty. Reg. No. 0065313, and JOSHUA LOUNSBURY, Atty. Reg. No. 0078175, 33 W. First Street, Suite 200, Dayton, Ohio 45402
        Attorneys for Defendant-Appellee, Fuyao Glass America Inc.

. . . . . . . . . . . .

HALL, J.

{¶ 1} Leroy Garner appeals from a judgment of the Montgomery County Court of Common Pleas granting summary judgment to Fuyao Glass America, Inc. and the Ohio Bureau of Workers' Compensation on his claim for workers' compensation benefits. The trial court properly concluded that Garner is not entitled to benefits, because his injury did not occur in the course of his employment and did not arise out of his employment. We affirm the trial court's judgment.

## I. Background

{¶ 2} The facts in this case are largely undisputed. Around 5:50 a.m. on November 11, 2016, Garner pulled his car into the driveway of Fuyao's parking lot. He worked at Fuyao performing machinery maintenance. His shift started at 6 a.m., and he would clock-in at a time clock in a building close to the parking lot. A car driven by Anthony Jackson, coming from the opposite direction, had pulled into the driveway right before Garner did. Jackson did not work at Fuyao but his wife did, and he was dropping her off. Garner testified in his deposition about what happened next:

Okay. So we pulled in where, the driveway goes down a hill and curves, and as we're going down the curve there, I don't know why, but he [Jackson] just stopped all of a sudden and just sat there. So I waited, I don't know how long, probably 10, 20 seconds. Didn't know why he stopped or what he stopped for, but I had like probably seven or eight minutes before I had to clock in, so I went on around him.

And I went in, parked my vehicle, backed it into the parking space. Got off my vehicle and was going in to clock in and then he comes flying

through the parking lot yelling at me that I'm too close to his car. And I said, well, that doesn't make any sense. I said, I'm parked and I'm not even on my vehicle and you just pulled up in front of me, so if I'm too close, it's your fault because you just pulled in. I'm not even attending to my vehicle, so if you think I'm too close to it, then that's your problem.

And he didn't like that and he kept yelling and screaming at me. I'm like whatever. I'm just trying to ignore him to go in to clock in. And he gets out of his car and he's yelling and screaming at me and stuff, and he's like what if I just get too close to you? I'm like, I really wouldn't recommend that. He was like, what if I just hit you? I'm like, I definitely would not recommend that. That's when he slugged me and knocked me down.

Then I got up and looked at him, I said, okay, you just assaulted me, congratulations. I said you are going to jail. He said, oh, no, I ain't. He got in his car and took off.

I then ran back to the guard shack where the guard was at and I said, I want you to call the police on this man. I said, he just assaulted me and, you know, I'm hurt and everything. And I got to the parking lot or got to the guard shack before his car did and the guard informed me that he is not going to call the police or he's not going to call the ambulance for me. He said if I wanted to do that, then it's on me.

So I said, okay, I'll do that. So I stood there at the exit and I was dialing 911 and Mr. Jackson yells out his car window, he's like, are you calling the cops? I said, absolutely, I am. I said, you assaulted me, I'm

calling the cops. He said, oh, no, you're not, and he ran over me and went out of the parking lot. Bounced me off of his car.

(Garner Dep. 27-29). The last paragraph refers to the fact that Garner ran after Jackson to the exit and stood in front of Jackson's car to prevent him from leaving, because Garner "wasn't just going to let him drive off." (*Id.* at 49). According to Garner, Jackson proceeded to hit him with his car, though Garner admitted that Jackson was driving only "10 to 15 [miles per hour], not real fast" when the car hit him. (*Id.* at 52). All of this occurred before Garner clocked-in for work.

{¶ 3} Garner called the police, and an officer responded. Garner told the officer that he wanted to file charges against Jackson, and Garner went to the police department a few days later and again said that he wanted to file charges. But the police ultimately decided not to charge Jackson. As noted above, Jackson was not an employee of Fuyao. Garner testified that he had never met Jackson previously: "Before he got out of his car and hit me, I had never laid eyes on this gentleman before in my life. My first interaction with him was his fists hitting me." (*Id.* at 44). Jackson's wife worked for Fuyao, but Garner had never had any interaction with her.

{¶ 4} Garner suffered a broken nose and underwent a surgical procedure to repair the damage. Later, Garner filed a workers' compensation claim. The claim was denied by the Bureau of Workers' Compensation—first by a District Hearing Officer and then by a Staff Hearing Officer, who both concluded that Garner did not sustain his injury in the course of his employment and that the injury did not arise out of his employment. Garner appealed the denial to the Montgomery County Court of Common Pleas. Fuyao and the Bureau of Workers' Compensation each filed a motion for summary judgment. On

February 22, 2018, the trial court granted both motions. Like the hearing officers, the court concluded that Garner was not injured in the course of his employment and that his injury did not arise out of his employment, because the origin of the assault was not work-related.

**{¶ 5}** Garner appeals.

## II. Analysis

**{¶ 6}** The sole assignment of error states:

The Trial Court erred in granting Defendants summary judgment and finding, as a matter of law, that Mr. Garner's injuries did not occur in the course of and arising out of his employment.

**{¶ 7}** "Civ.R. 56(C) provides that summary judgment may be granted when the moving party demonstrates that (1) there is no genuine issue of material fact, (2) the moving party is entitled to judgment as a matter of law, and (3) viewing the evidence most strongly in favor of the nonmoving party, reasonable minds can come to but one conclusion and that conclusion is adverse to the party against whom the motion for summary judgment is made." *Taylor v. Meijer, Inc.*, 182 Ohio App.3d 23, 2009-Ohio-1966, 911 N.E.2d 344, ¶ 11 (2d Dist.), citing *State ex rel. Grady v. State Emp. Relations Bd.*, 78 Ohio St.3d 181, 183, 677 N.E.2d 343 (1997); *Harless v. Willis Day Warehousing Co.*, 54 Ohio St.2d 64, 375 N.E.2d 46 (1978). "Our review of the trial court's decision to grant summary judgment is de novo." (Citation omitted.) *Taylor at* ¶ 11.

**{¶ 8}** Ohio's workers' compensation statutes provide benefits for injuries "received in the course of, and arising out of, the injured employee's employment." R.C. 4123.01(C). The general test is "whether a 'causal connection' existed between the employee's injury

and his employment either through the activities, the conditions, or the environment of the employment." *Taylor* at ¶ 12, citing *Fisher v. Mayfield*, 49 Ohio St.3d 275, 277, 551 N.E.2d 1271 (1990), citing *Indus. Comm. v. Weigandt*, 102 Ohio St. 1, 130 N.E. 38 (1921). "The in-the-course-of-employment and arising-out-of-employment elements overlap, but an injured employee must prove the existence of both elements." *Id.* at ¶ 15, citing *Ruckman v. Cubby Drilling, Inc.*, 81 Ohio St.3d 117, 124, fn. 3, 689 N.E.2d 917 (1998).

{¶ 9} The "in the course of" element refers to the "time, place, and circumstances of the injury, and limits compensation to injuries received while the employee was engaged in a duty required by the employer." *Janicki v. Kforce.com*, 167 Ohio App.3d 572, 2006-Ohio-3370, 855 N.E.2d 1282, ¶ 13 (2d Dist.), citing *Fisher* at 277. The "arising out of" element "contemplates a causal connection between the injury and the employment." *Fisher* at 278. A causal connection is determined by looking at "the totality of the facts and circumstances surrounding the accident, including the proximity of the scene of the accident to the place of employment, the degree of control the employer had over the scene of the accident, and the benefit the employer received from the injured employee's presence at the scene of the accident." *Taylor* at ¶ 14, citing *Fisher* at 277, citing *Lord v. Daugherty*, 66 Ohio St.2d 441, 423 N.E.2d 96 (1981), syllabus. But because workers' compensation cases are very fact specific, "no one test or analysis can be said to apply to each and every factual possibility." *Fisher* at 280. For this reason, "historically, similar fact patterns have promulgated their own set of rules." *Id.*

{¶ 10} "One such fact pattern involves fights and assaults that occur at the workplace." *Foster v. Cleveland Clinic Found.*, 8th Dist. Cuyahoga Nos. 84156, 84169, 2004-Ohio-6863, ¶ 13. "In workers' compensation cases concerning fights and assaults

during work hours at the place of employment, Ohio courts have consistently focused on two factors: (1) if the origin of the assault was work-related; and (2) if the claimant was not the instigator." *Id.*, citing *Coleman v. APCOA, Inc.*, 10th Dist. Franklin No. 99AP-60, 2000 WL 192560, *2 (Sept. 28, 1999). *Accord Meager v. Complete Auto Transit, Inc.*, 2d Dist. Montgomery No. 13062, 1992 WL 41831 (Mar. 4, 1992). "The injury is compensable only if both findings are made." (Citations omitted.) *Coleman at *2*.

{¶ 11} The trial court here relied primarily on the Eighth District's judgment in *Foster v. Cleveland Clinic*, in which workers' compensation benefits were sought after a woman was shot to death at the clinic where she worked. The woman and her husband were having marital troubles, and her husband had made several violent outbursts. One day, the woman was driven to work by her ex-husband. While in the parking lot, the woman and her ex-husband were confronted by her gun-wielding current husband. He shot at their vehicle, injuring the ex-husband, and then he chased the woman into the building housing the clinic and fatally shot her in the lobby. Neither the husband nor the ex-husband was an employee of the clinic. The appellate court affirmed summary judgment for the employer and the Bureau of Workers' Compensation, because the assault was not work-related:

> Construing this evidence in a light most favorable to [the claimant], reasonable minds could only conclude that [the woman]'s fatal injury arose out of a personal dispute between her and [her husband] that was unrelated to her employment with the Clinic. There is simply no evidence to remotely suggest that [the husband]'s fatal shooting of [the woman] originated out of, was related in any way to, or was exacerbated by, her employment at the

Clinic. The quarrel was nothing more than a domestic dispute brought to fruition in the employment setting.

*Foster* at ¶ 16. "It is apparent," said the court, "that the shooting that morning arose strictly out of the marital discord between [the husband] and [the woman], unrelated to any job responsibilities that [she] had at the Clinic. [Her] injury was 'independent of and disconnected with' employment and, therefore, is noncompensable." *Id.* at ¶ 23. The court found no evidence showing a causal connection between the woman's injury and her employment. In fact, the court found that the evidence showed just the opposite:

> [T]he evidence reflects that although the fatal shooting occurred in close proximity to [her] workplace, it did not occur during working hours, as she had not yet started her shift when the shooting occurred. Moreover, she was not performing her work duties when the shooting occurred, nor was she reporting for duty, as [the claimant] contends. Instead, the evidence demonstrates that [she] was fleeing her assailant when she entered the lobby of the Clinic; she was not in or near her normal work area when the shooting occurred. Finally, the evidence demonstrates that the argument between [the woman] and [her husband] was not related to any of her work duties; it was a personal dispute exacerbated by [her] ongoing off-duty relationship with her ex-husband.

*Id.* at ¶ 27.

{¶ 12} Garner relies on this Court's decision in *Meager v. Complete Auto Transit, Inc.*, 2d Dist. Montgomery No. 13062, 1992 WL 41831 (Mar. 4, 1992). In that case, the claimant and another employee engaged in horseplay on company time that resulted in

spilled coffee. The claimant left to work on his personal vehicle on company time, which he did with permission. The other employee clocked-out and then assaulted the claimant. We concluded that the claimant's injury could be compensable "because although he was not engaged in the actual performance of work for [his employer], he was performing work within the employer's scope of permission." *Meager* at *3. So the claimant's work on his personal vehicle was "arguably within the service of his employer and within the acceptable course of conduct." *Id.* at *4. We further noted that injuries sustained during personal breaks are typically compensable and that "whether [the claimant]'s five minutes of work on his personal vehicle could be considered a personal break constitutes a genuine issue of material fact." *Id.*

{¶ 13} The present case is distinguishable from *Meager* and analogous to *Foster*. The circumstances in *Meager* plainly differ from those in this case, in several respects. Unlike here, in *Meager* the dispute that led to the assault and the injury arose in the actual workplace, during work time, with another employee. We agree with the trial court that the circumstances in which Garner was injured are more like those in *Foster*. Like in *Foster*, the injury here occurred outside the actual workplace and did not occur during working hours, as Garner was not performing his work duties when he suffered the injury. Also, the assault here did not involve another employee, and the dispute leading up to the assault was not related to Garner's work duties. Like in *Foster*, the dispute that led to the assault was over an entirely unrelated personal matter.

{¶ 14} The trial court was not convinced by Garner's argument that his injury is compensable solely because it occurred in the employee parking lot. Neither are we. Other courts have concluded that an injury was not compensable where the origin of the

assault was not work-related, even though the injury occurred close to the place of employment. *See, e.g., Foster*, 8th Dist. Cuyahoga Nos. 84156, 84169, 2004-Ohio-6863, at ¶ 28 (holding that the woman's fatal injury "was not work-related, even though it occurred on her employer's premises"); *Lowe v. Cox Paving, Inc.*, 190 Ohio App.3d 154, 2010-Ohio-3816, 941 N.E.2d 88, ¶ 22 (12th Dist.) (although the events "occurred on the jobsite, the disagreement did not involve work-related matters," because the argument "resulted from a personal dispute over beer"). Similarly, Garner's injury is not compensable solely because it occurred in the employee parking lot.

{¶ 15} Construing the evidence most strongly in favor of Garner, we agree with the trial court that there is no genuine issue of material fact and that reasonable minds can conclude only that Garner's injuries were not received "in the course of" and "arising out of" his employment. Consequently he is not entitled to workers' compensation benefits and Fuyao and the Bureau of Workers' Compensation are entitled to judgment as a matter of law.

### III. Conclusion

{¶ 16} The trial court did not err by entering summary judgment. The sole assignment of error is overruled.

{¶ 17} The trial court's judgment is affirmed.

. . . . . . . . . . . . .

WELBAUM, P. J., and FROELICH, J., concur.

Copies mailed to:

Shawn M. Wollam
Abigail Marchisio
Jacquelyn McTigue
David C. Korte
Michelle D. Bach
Joshua R. Lounsbury
Hon. Dennis J. Langer