[Cite as *McAlpine v. McCloud*, 2021-Ohio-2430.]

**IN THE COURT OF APPEALS OF OHIO**
**SECOND APPELLATE DISTRICT**
**MONTGOMERY COUNTY**

| | | |
|---|---|---|
| DEBRA S. MCALPINE | : | |
| | : | |
| Plaintiff-Appellant | : | Appellate Case No. 29044 |
| | : | |
| v. | : | Trial Court Case No. 2020-CV-1620 |
| | : | |
| STEPHANIE B. MCCLOUD, | : | (Civil Appeal from |
| ADMINISTRATOR, BUREAU OF | : | Common Pleas Court) |
| WORKERS' COMPENSATION, et al. | : | |
| | : | |
| Defendants-Appellees | : | |

. . . . . . . . . . .

O P I N I O N

Rendered on the 16th day of July, 2021.

. . . . . . . . . . .

GARY D. PLUNKETT, Atty. Reg. No. 0046805, MARCUS A. HEATH, Atty. Reg. No. 0096777, & AMY L. METCALFE, Atty. Reg. No. 0080173, 3033 Kettering Boulevard, Suite 201, Dayton, Ohio   45439
          Attorneys for Plaintiff-Appellant

JONATHAN F. HUNG, Atty. Reg. No. 0082434, 800 Performance Place, 109 North Main Street, Dayton, Ohio 45402
          Attorney for Defendant-Appellee, Choice Health Care Ltd.

DAVID FIERST, Atty. Reg. No. 0043954, 1600 Carew Tower, 441 Vine Street, Cincinnati, Ohio 45202
          Attorney for Defendant-Appellee, Stephanie B. McCloud, Adm., Ohio Bureau of Workers' Compensation

. . . . . . . . . . . . .

EPLEY, J.

{¶ 1} Debra S. McAlpine appeals from a judgment of the Montgomery County Court of Common Pleas, which overruled her motion for summary judgment and sustained the motions of Choice Health Care Ltd. and the Administrator of the Ohio Bureau of Workers' Compensation (BWC) for summary judgment on her claim for workers' compensation benefits. The trial court concluded that McAlpine did not sustain an injury in the course of and arising out of her employment. For the following reasons, the trial court's judgment will be affirmed.

## I. Facts and Procedural History

{¶ 2} The parties' evidence, construed in McAlpine's favor, reveals the following facts. McAlpine worked as a home health aide for Choice Health for approximately 13 years. Throughout that time, she provided care for Lisa Wilkins, whom McAlpine had recommended to Choice Health as a client. For several years, Wilkins was McAlpine's only patient. The two had been close friends since they were in high school; at the time of McAlpine's deposition in August 2020, McAlpine was 57 years old. Choice Health was aware of McAlpine's friendship with Wilkins.

{¶ 3} As Wilkins's home health aide, McAlpine worked three two-hour shifts at Wilkins's home, seven days per week. Her shifts began at 8:00 a.m., 1:00 p.m., and 7:00 p.m. McAlpine typically left the residence after each shift, but sometimes stayed and talked or watched television with Wilkins. Once in a while, such as when Wilkins needed additional care upon returning home after a hospital stay, McAlpine stayed at Wilkins's home overnight. McAlpine stated that she did so out of friendship, not as part of her assigned duties.

{¶ 4} On September 7, 2019, McAlpine sustained a T12 vertebrae compression fracture while at Wilkins's residence. McAlpine worked her 8:00 a.m. shift and clocked out at 10:00 a.m. At approximately 10:15 a.m., she went onto the front porch of Wilkins's home to leave and heard a "loud noise on the right side of the house." (McAlpine Aff. ¶ 4.) McAlpine descended the porch stairs, stepped into the grass, and went around the right side of the house to investigate. She did not see anything. As McAlpine approached a small concrete divider wall on Wilkins's property, she slipped and fell on the wet grass, injuring her back.

{¶ 5} McAlpine sought workers' compensation benefits, which were denied. In December 2019, the matter was heard before a district hearing officer of the Ohio Industrial Commission (OIC). The hearing officer disallowed McAlpine's claim, concluding that she did not sustain an injury arising out of her employment. McAlpine appealed that determination. Upon review, the OIC staff hearing officer reached a similar conclusion. He found that "as the Claimant departed from the client's house, she removed herself from activity in the course of and arising out of her employment when she departed from the walkway in order to investigate a noise that she perceived to come from the side of her friend's house. At that point, the Claimant was not in the course of her duties and her activity did not arise from her employment, but instead arose out of the relationship with her friend." The OIC "refused" further appeal.

{¶ 6} On April 3, 2020, McAlpine filed a complaint in the common pleas court, appealing from the denial of her claim for workers' compensation. McAlpine moved for summary judgment, asserting that she suffered an "on-premises injury as a result of a slip and fall while in the course of and arising out of her employment." McAlpine asserted

that she was at the home of her client and was doing her job as a home health aide when she investigated the noise at the home. McAlpine stated that, because the injury occurred on the premises of her employment, her injury was compensable as a matter of law, pursuant to *Griffin v. Hydra-Matic Div., Gen. Motors Corp.*, 39 Ohio St.3d 79, 529 N.E.2d 436 (1988). McAlpine supported her motion with her own affidavit and the affidavit of Dr. James Lehner, a board-certified orthopedic surgeon.

{¶ 7} Choice Health and the BWC opposed McAlpine's motion and filed cross-motions for summary judgment on her claim. BWC argued that McAlpine had "clocked out" prior to the accident and that the injury occurred outside of the patient's home. It further asserted that she could not claim to be a "fixed situs" employee, considering that Choice Health concluded that she was engaged in an inappropriate relationship with Wilkins's husband and, after the injury, admitted to living at the Wilkinses' residence. BWC supported its memorandum and cross-motion with the affidavit of Dana Albaugh, Director of Nursing for Choice Health, and Choice Health records regarding the incident. Choice Health also relied on Albaugh's affidavit and argued that it had no control over the scene of the injury and that McAlpine had clocked out at the time of the injury. Choice Health thus argued that the coming-and-going rule barred her claim.

{¶ 8} McAlpine moved to strike Albaugh's affidavit on the grounds that it was based on hearsay, hearsay within hearsay, and speculation. She also responded to the cross-motions for summary judgment, emphasizing that "[t]he only facts that matter are that she was injured on the premises of her employment and she was not intoxicated, she was not engaged in horseplay, and there are no idiopathic conditions that could have caused this injury." (Emphasis omitted.) Choice Health and BWC opposed the motion to strike.

They also filed supplemental motions for summary judgment to include references to McAlpine's deposition, which was taken after the summary judgment motions were filed.

{¶ 9} On February 22, 2021, the trial court denied the motion to strike Albaugh's affidavit, denied McAlpine's motion for summary judgment, and granted Choice Health's and the BWC's cross-motions for summary judgment. The court concluded that no genuine issue of material fact existed whether McAlpine "was going from her place of employment at the time she went to check on a noise she heard around the side of Ms. Wilkins' house since she had clocked out after her first shift." The court further concluded that, as a result, McAlpine's claim was precluded by the coming-and-going rule and no exception to the rule applied.

{¶ 10} McAlpine appeals from the trial court's summary judgment rulings. She does not challenge the court's decision on her motion to strike.

## II. Standard of Review for Motion for Summary Judgment

{¶ 11} Pursuant to Civ.R. 56(C), summary judgment is proper when (1) there is no genuine issue as to any material fact, (2) the moving party is entitled to judgment as a matter of law, and (3) reasonable minds, after construing the evidence most strongly in favor of the nonmoving party, can only conclude adversely to that party. *Zivich v. Mentor Soccer Club, Inc.*, 82 Ohio St.3d 367, 369-370, 696 N.E.2d 201 (1998). The moving party carries the initial burden of affirmatively demonstrating that no genuine issue of material fact remains to be litigated. *Mitseff v. Wheeler*, 38 Ohio St.3d 112, 115, 526 N.E.2d 798 (1988). To this end, the movant must be able to point to evidentiary materials of the type listed in Civ.R. 56(C) that a court is to consider in rendering summary judgment. *Dresher v. Burt*, 75 Ohio St.3d 280, 292-293, 662 N.E.2d 264 (1996).

{¶ 12} Once the moving party satisfies its burden, the nonmoving party may not rest upon the mere allegations or denials of the party's pleadings. *Dresher* at 293; Civ.R. 56(E). Rather, the burden then shifts to the nonmoving party to respond, with affidavits or as otherwise permitted by Civ.R. 56, setting forth specific facts that show that there is a genuine issue of material fact for trial. *Dresher* at 293. Throughout, the evidence must be construed in favor of the nonmoving party. *Id.*

{¶ 13} We review the trial court's ruling on a motion for summary judgment de novo. *Schroeder v. Henness*, 2d Dist. Miami No. 2012-CA-18, 2013-Ohio-2767, ¶ 42. De novo review means that this court uses the same standard that the trial court should have used, and we examine all the Civ.R. 56 evidence, without deference to the trial court, to determine whether, as a matter of law, no genuine issues exist for trial. *Ward v. Bond*, 2d Dist. Champaign No. 2015-CA-2, 2015-Ohio-4297, ¶ 8.

### III. Compensability under Workers' Compensation Statute

{¶ 14} McAlpine raises two assignments of error, which we will address together:

1.   The Trial Court erred in granting Defendant Choice Health Care Ltd.'s Motion for Summary Judgment as Ms. McAlpine suffered an on-premises, compensable injury in the course of and arising out of her employment.

2.   The Trial Court erred when it found appellant was subject to the "coming and going" rule precluding Ms. McAlpine from participation in the Ohio worker's compensation fund as she was on the premises of her employment and had not completed her work duties at the time of her injury.

{¶ 15} Ohio's Workers' Compensation Act, R.C. Chapter 4123, provides coverage for injuries that are received "in the course of, and arising out of, the injured employee's

employment." R.C. 4123.01(C); *Osten v. Bur. of Workers' Comp.*, 2017-Ohio-9315, 102 N.E.3d 1189, ¶ 9 (2d Dist.). "The purpose of Ohio's workers' compensation system is to provide compensation to employees and their families for injuries or death that occur while on the job." *Coleman v. KBO, Inc.*, 2d Dist. Clark No. 2017-CA-82, 2018-Ohio-763, ¶ 11, citing, e.g., Ohio Constitution, Article II, Section 35; *Schramm v. Appleton Papers, Inc.*, 162 Ohio App.3d 270, 2005-Ohio-3663, 833 N.E.2d 336, ¶ 21 (2d Dist).

{¶ 16} The coverage requirements are to be liberally construed in an employee's favor. *Fisher v. Mayfield*, 49 Ohio St.3d 275, 277-278, 551 N.E.2d 1271 (1990). However, workers' compensation cases are often fact-specific, and "a reviewing court must examine the separate and distinct facts of each case." *White v. Buehrer*, 2d Dist. Montgomery No. 27295, 2017-Ohio-8254, ¶ 12.

{¶ 17} The "in the course of" and "arising out of" requirements overlap, but are separate requirements. The Ohio Supreme Court has held that "in the course of" relates to "the time, place, and circumstances of the injury." *Friebel v. Visiting Nurse Assn. of Mid-Ohio*, 142 Ohio St.3d 425, 2014-Ohio-4531, 32 N.E.3d 413, ¶ 13; *see Piazza v. Cuyahoga Cty.*, 157 Ohio St.3d 497, 2019-Ohio-2499, 138 N.E.3d 1108, ¶ 21. This requirement limits "benefits to employees who sustain injuries while engaged in a required employment duty or activity consistent with their contract for hire and logically related to the employer's business." *Id.*

{¶ 18} In contrast, "arising out of" focuses on the causal connection between the employment and the injury. *Friebel* at ¶ 14. A causal connection is determined by examining "the totality of the facts and circumstances surrounding the accident, including the proximity of the scene of the accident to the place of employment, the degree of

control the employer had over the scene of the accident, and the benefit the employer received from the injured employee's presence at the scene of the accident." *Garner v. Bur. of Workers' Comp.*, 2018-Ohio-3398, 118 N.E.3d 479, ¶ 9 (2d Dist.); *Lord v. Daugherty*, 66 Ohio St.2d 441, 444, 423 N.E.2d 96 (1981). *Accord Friebel* at ¶ 14.

{¶ 19} Injuries sustained during an employee's commute to and from his or her place of employment generally are not compensable. *Baughman v. Eaton Corp.*, 62 Ohio St.2d 62, 63, 402 N.E.2d 1201 (1980). The coming-and-going rule commonly precludes workers' compensation coverage for an employee with a fixed place of employment who is injured while traveling to or from her place of employment because no causal connection between the injury and the employment exists. *Foster v. Bur. of Workers' Comp.*, 2d Dist. Montgomery No. 25657, 2013-Ohio-4075, ¶ 7; *Janicki v. Kforce.com*, 167 Ohio App.3d 572, 2006-Ohio-3370, 855 N.E.2d 1282, ¶ 14 (2d Dist.).

{¶ 20} The Ohio Supreme Court has identified three limited exceptions to the application of the coming-and-going rule: (1) the zone of employment exception; (2) the special hazard exception; and (3) the totality of the circumstances exception. *Molton v. Kroger Co.*, 2d Dist. Montgomery No. 27184, 2017-Ohio-565, ¶ 10, citing *Janicki* at ¶ 19.

{¶ 21} The zone-of-employment exception renders an injury compensable if it occurred within the zone of employment. *MTD Products, Inc. v. Robatin*, 61 Ohio St.3d 66, 69, 572 N.E.2d 661 (1991). "Zone of employment" has been defined as "the place of employment and the area thereabout, including the means of ingress thereto and egress therefrom, under control of the employer." *Janicki* at ¶ 20.

{¶ 22} The special-hazard rule allows an employee to collect workers' compensation benefits when the employment creates a special hazard and the

employee's injury results from that hazard.   *Id.* at ¶ 21; *MTD Products* at 68.   The rule applies where "(1) 'but for' the employment, the employee would not have been at the location where the injury occurred, and (2) the risk is distinctive in nature or quantitatively greater than the risk common to the public."   *Id.*

{¶ 23} The  totality-of-the-circumstances  test  requires  "primary  analysis  of  the following facts and circumstances: '(1) proximity of the scene of the accident to the place of employment, (2) the degree of control the employer had over the scene of the accident, and (3) the benefit the employer received from the injured employee's presence at the scene of the accident.' " *Ruckman v. Cubby Drilling, Inc.*, 81 Ohio St.3d 117, 122, 689 N.E.2d 917 (1998), quoting *Lord v. Daugherty*, 66 Ohio St.2d 441, 423 N.E.2d 96 (1981), syllabus.

{¶ 24} The  trial  court  concluded  that  McAlpine  was  subject  to  the  coming-and-going rule and that none of the three exceptions to the rule applied.   The parties agree that McAlpine had a single client, that she worked at a fixed location, and that she was injured in Wilkins's yard.   They dispute, however, whether she was in the process of commuting, as Choice Health and BWC contend, or was at her work site, as McAlpine asserts.

{¶ 25} The Ohio Supreme Court has stated that, in determining whether an employee is a fixed-situs employee and therefore within the coming-and-going rule, the focus is on whether the employee commences his or her substantial employment duties only after arriving at a specific and identifiable work place designated by his employer. *Ruckman* at 119.   McAlpine argues that the "specific and identifiable work place" was Wilkins's property, and because of her injury occurred at her work site, the coming-and-

going rule did not apply.

{¶ 26} McAlpine relies on *Griffin v. Hydra-Matic*, 39 Ohio St.3d 79, 529 N.E.2d 436. In *Griffin*, the factory employee had completed her shift for the day and was injured when she slipped and fell on a wet or icy spot in a driveway between the plant where she worked and the company's parking lot. The employer conceded that the injury occurred in the course of Griffin's employment. It argued, however, that the injury did not "arise from" her employment, because no "special hazard," as discussed in *Littlefield v. Pillsbury Co.*, 6 Ohio St.3d 389, 453 N.E.2d 570 (1983), existed.

{¶ 27} The Ohio Supreme Court noted that, unlike Griffin's circumstances, the injury in *Littlefield* did not occur on the employer's premises and held that *Littlefield* did not apply to injuries sustained in the course of employment upon the employment premises. It clarified that the "special hazard" requirement "is merely an exception to the 'going and coming rule.' " *Griffin* at 80. *Griffin* thus concluded that the presence of a special hazard was irrelevant to whether an injury that occurred on the employer's premises was compensable. *Id.* at 82.

{¶ 28} McAlpine was injured on the property of her client, Lisa Wilkins. According to Albaugh's affidavit, Wilkins's home was neither Choice Health's property nor was it under Choice Health's custody, care, or control. McAlpine provided no evidence to refute that statement. Thus, unlike the property in *Griffin*, we disagree with McAlpine that the entirety of Wilkins's property necessarily constituted the employment premises in this case.

{¶ 29} When determining the location of McAlpine's employment, we look to the location "where an employee's substantial duties begin." *Kershner v. High Point Home*

*Health, Ltd.*, 2d Dist. Miami No. 2012-CA-26, 2013-Ohio-1370, ¶ 21; *Mitchell v. Cambridge Home Health Care, Inc.*, 9th Dist. Summit No. 24163, 2008-Ohio-4558, ¶ 9; *see also Foster v. Bur. of Worker's Comp.*, 2d Dist. Montgomery No. 25657, 2013-Ohio-4075, ¶ 8.

**{¶ 30}** The Ninth District has held that a home health aide's injury occurred outside of her fixed work site when she tripped and fell on a floor mat while exiting the elevator in the client's apartment building. *Mitchell* at ¶ 20. Although Mitchell had stated that she performed some duties outside her client's specific apartment, such as taking out trash, the appellate court concluded that her fixed work site did not include the common area where the injury occurred. The court reasoned:

> The record reflects that Mitchell had finished her duties for the day when she left her patient's apartment. She admitted that she was in the process of leaving for home when her injury occurred. Thus, even if Mitchell's patient's hallway and elevator could be considered to constitute a part of Mitchell's fixed situs on a day when she was performing laundry services, trash removal services, or other transitory services, the record reflects that Mitchell was not performing any of these services when she was injured. She had finished all of her duties for the day and was "travel[ing] * * * from h[er] place of actual employment" when she was injured. *See Ruckman*, 81 Ohio St.3d at 119, 689 N.E.2d 917. As such, the trial court did not err in determining that Mitchell was subjected to the "coming and going rule."

*Id.* at ¶ 15.

{¶ 31} As in *Mitchell*, McAlpine generally performed her job duties inside her client's residence. McAlpine testified during her deposition that her duties included cleaning, cooking, assisting with bathing, and running errands. McAlpine's testimony reflected that her substantial duties began upon entering Wilkins's home, where her client was bedbound. McAlpine did not provide any evidence that she had any duties in Wilkins's yard, and although she sometimes ran errands for her client, she provided no evidence that she was in the process of running an errand for Wilkins in her capacity as a Choice Health employee at the time of the injury. To the contrary, McAlpine acknowledged that she had clocked out at the end of her morning shift, had exited the home, and was heading to her vehicle when she entered Wilkins's yard and fell. Under these circumstances, the trial court correctly found that the coming-and-going rule, as opposed to *Griffin*, was applicable.

{¶ 32} Moreover, construing the evidence in the light most favorable to McAlpine, none of the exceptions to the coming-and-going rule apply. First, nothing in the record supports a conclusion that McAlpine's employment created a special hazard and that her injury resulted from that hazard. McAlpine stated that she was injured when she slipped on wet grass in Wilkins's yard approximately 15 minutes after her shift ended. McAlpine was a long-time friend of Wilkins, and she testified that "it's my time" once she (McAlpine) had completed her shift. The record, thus, does not establish that, at the time of the injury, McAlpine was at Wilkins's residence "but for" her employment. Regardless, even assuming that she would not have been in Wilkins's yard but for her employment, there is no evidence that the risk from grass wet with dew is distinctive in nature or quantitatively greater than the risk common to the public.

{¶ 33} Second, the zone of employment exception does not apply. Wilkins's property was not under the custody or control of Choice Health. Hypothetically, if the path of travel from Wilkins's front door to McAlpine's vehicle fell within the zone of employment, McAlpine admittedly deviated from that path to check on a noise around the side of the home. McAlpine was injured in the grass around the side of the house, not on the route to her vehicle. Accordingly, the record does not support a claim that McAlpine was injured within the zone of employment.

{¶ 34} Finally, the record does not support a conclusion that McAlpine's injury is compensable under the totality of the circumstances. It is undisputed that McAlpine had clocked out at 10:00 a.m. on September 7, 2019, upon the completion of her shift. McAlpine stated in her deposition that, on an average day, she would leave Wilkins's home at 10:00 a.m. to go home or run errands, "anything that I needed to do." (McAlpine Depo. at 56.) On September 7, 2019, McAlpine left Wilkins's residence "in [the] general area" of 10:15 a.m., approximately 15 minutes after her shift ended. (*Id.* at 42, 73.)

{¶ 35} McAlpine's deposition testimony reflects that she did not consider herself to be working for Choice Health once she clocked out. McAlpine acknowledged that Choice Health did not require her to take care of Wilkins when she was "off the clock." When asked to explain her assertion that she was required to care for Wilkins regardless of whether she was "on the clock," McAlpine responded, "I just wanted to make sure she's safe, no matter if I was working or not working on the clock. She was my friend." McAlpine further testified that she considered herself to be on her time after she clocked out, as evidenced by the following exchange:

Q. And then at 10:00 you were what you considered off the clock?

A.  Correct.

Q.  After 10:00, did you consider that to be a personal relationship or personal situation?

A.  Well, she was my friend longer than she was my client.

Q.  Right.

A.  So when I'm off the clock, then it's my time.  So she's my friend.

McAlpine Depo. at 27-28.)

{¶ 36} Moreover, although McAlpine's injury occurred on Wilkins's property, it did not occur while she was headed toward her car following the end of her shift.  Rather, McAlpine went around the side of Wilkins's home to check on a noise and fell in the wet grass.  The evidence does not support a conclusion that McAlpine's injuries are compensable under the totality of the circumstances exception.

{¶ 37} We do not read *Griffin* to require that McAlpine's injury be compensable as a job site injury.  As noted by the Fifth District:

> We agree that an employee walking to his or her vehicle, upon the completion of a shift, is a necessary aspect of an employees' job and therefore benefits the employer.  However, we also find that common sense limitations must apply to the [Ohio Supreme] Court's holding in *Griffin*.  For example, it would be unreasonable for us to assume that the Ohio Supreme Court, by its holding in *Griffin*, intended to allow an employee, who is injured while walking to his or her vehicle after the completion of a shift, recovery no matter what the facts are surrounding the cause of the injury.

*Smith v. F.E. Schumacher Co.*, 5th Dist. Stark No. 1996CA00160, 1997 WL 220297, *4 (Apr. 21, 1997). Regardless of the location of McAlpine's injury, she was required to present evidence that her injuries occurred in the course of and arising out of her employment. In our view, the evidence does not support a conclusion that McAlpine's injury occurred within the course of her employment and arising out of her employment.

{¶ 38} McAlpine's assignments of error are overruled.

### III. Conclusion

{¶ 39} The trial court's judgment will be affirmed.

. . . . . . . . . . . . .

TUCKER, P. J. and WELBAUM, J., concur.

Copies sent to:

Gary D. Plunkett
Marcus A. Heath
Amy L. Metcalfe
Jonathan F. Hung
David Fierst
Hon. Michael W. Krumholtz