[Cite as *Timmons v. Hull*, 2024-Ohio-178.]

IN THE COURT OF APPEALS OF OHIO
SECOND APPELLATE DISTRICT
CLARK COUNTY

| | | |
|---|---|---|
| JAMES TIMMONS, ET AL. | : | |
| Appellees | : | C.A. No. 2023-CA-23 |
| | : | |
| v. | : | Trial Court Case No. 19-CV-0297 |
| | : | |
| JAMES HULL, ET AL. | : | (Civil Appeal from Common Pleas Court) |
| Appellants | : | |
| | : | |

. . . . . . . . . . .

O P I N I O N

Rendered on January 19, 2024

. . . . . . . . . . .

RYAN L. THOMAS, Attorney for Appellants

EDWARD A. FRIZZELL, Attorney for Appellees

. . . . . . . . . . . .

LEWIS, J.

{¶ 1} Defendants-Appellants James Hull and Tuara Hull (collectively "Defendants") appeal from a judgment of the Clark County Court of Common Pleas, which granted summary judgment in favor of Plaintiffs-Appellees James Timmons and Larry Timmons (collectively "Plaintiffs") on their unjust enrichment claim and awarded damages. For the

following reasons, we will reverse the judgment of the trial court and remand for further proceedings.

### I.    Procedural History and Facts

{¶ 2} Plaintiffs, who are brothers, were equal partners in a farming business that included buying and selling livestock.   As part of that business, Plaintiffs sold cattle to James Hull between approximately 2009 and 2017 based on a handshake agreement. On June 10, 2019, Plaintiffs filed a civil action in the Clark County Court of Common Pleas against the Defendants alleging breach of contract, unjust enrichment, and fraud relating to the buying and selling of cattle during seven separate transactions that occurred over the course of approximately one year.

{¶ 3} According to Plaintiffs, it was the practice of the parties for James Hull to make payment for the cattle immediately upon delivery of the cattle to James Hull or within 30 days of delivery.   James Hull was a middleman who purchased heifers from Plaintiffs and resold the cows to other dairy farmers or at market.   Around 2016, James Hull purchased cattle from Plaintiffs on seven separate occasions in which he wrote checks for each transaction but requested Plaintiffs not cash the checks due to having insufficient funds.   All the checks were written on a joint checking account in the name of James and Tuara Hull, as husband and wife.   Plaintiffs alleged that Defendants never made good on the seven checks and therefore owed them $128,950, the aggregate amount of all the checks.   Although Plaintiffs attempted to collect the amount, Defendants denied that they owed any payments to Plaintiffs and refused to pay, which led to the filing of the complaint.

{¶ 4} According to the Defendants' answer to the complaint, James Hull admitted

that he and Plaintiffs had engaged in the sale and purchase of cattle for several years. However, Defendants denied that they owed Plaintiffs any money as all the transactions had been paid in full, either by James Hull or a third party for the benefit of the Plaintiffs, after evaluating the cattle.

{¶ 5} On February 26, 2021, Plaintiffs filed a motion for leave to file a motion for summary judgment. Although the trial court sustained Plaintiffs' motion for leave to file a motion for summary judgment, additional discovery and depositions were completed before Plaintiffs ultimately filed their motion.

{¶ 6} On November 12, 2021, Plaintiffs filed a motion for summary judgment as to all claims. Following several joint continuances and additional discovery and depositions, Defendants filed a response to the motion for summary judgment. In their response, Defendants asserted that there was an issue of material fact in dispute and, further, they requested that Tuara Hull be dismissed from the case as she had no involvement in the purchasing and selling of any cattle.

{¶ 7} On February 4, 2022, the trial court granted Plaintiffs' motion for summary judgment solely on the claim of unjust enrichment against both James and Tuara Hull and ordered a hearing to determine damages. Following a damages hearing and closing arguments, the trial court issued a judgment that awarded damages to Plaintiffs in the amount of $120,150.00. The remaining two claims for fraud and breach of contract were voluntarily dismissed by Plaintiffs on April 21, 2023.

{¶ 8} Defendants filed a timely notice of appeal and raise the following two assignments of error relating to the unjust enrichment claim:

1.  THE TRIAL COURT ERRED TO THE PREJUDICE OF DEFENDANTS IN GRANTING PLAINTIFFS' MOTION FOR SUMMARY JUDGMENT FOR UNJUST ENRICHMENT BY WEIGHING THE EVIDENCE TO RESOLVE QUESTIONS OF FACT IN FAVOR OF THE MOVING PARTY.

2.  PLAINTIFFS FAILED TO SATISFY THE NECESSARY ELEMENTS FOR THEIR CLAIM OF UNJUST ENRICHMENT AGAINST DEFENDANT TUARA HULL AND THE TRIAL COURT ERRED TO THE PREJUDICE OF DEFENDANT TUARA HULL BY GRANTING SUMMARY JUDGMENT AGAINST HER.

{¶ 9} In their first assignment of error, Defendants argue that the trial court erred in granting summary judgment against them for unjust enrichment when there remained a genuine issue of material fact.   We agree.

### II.    Summary Judgment Standard

{¶ 10} Appellate review of a trial court's ruling granting or denying a party's motion for summary judgment is de novo.   *Rhododendron Holdings, LLC v. Harris*, 2021-Ohio-147, 166 N.E.3d 725, ¶ 22 (2d Dist.), citing *Schroeder v. Henness*, 2d Dist. Miami No. 2012-CA-18, 2013-Ohio-2767, ¶ 42.   De novo review requires an appellate court to apply the same standard that the trial court should have used without deference to the trial court's findings.   *Riverside v. State*, 2016-Ohio-2881, 64 N.E.3d 504, ¶ 21 (2d Dist.).

{¶ 11} Civ.R. 56(C) provides for summary judgment where: "the pleadings, depositions, answers to interrogatories, written admissions, affidavits, transcripts of

evidence, and written stipulations of fact, if any, timely filed in the action, show that there is no genuine issue as to any material fact and that the moving party is entitled to judgment as a matter of law." "Summary judgment will be granted only when there remains no genuine issue of material fact and, when construing the evidence most strongly in favor of the nonmoving party, reasonable minds can only conclude that the moving party is entitled to judgment as a matter of law." *Byrd v. Smith*, 110 Ohio St.3d 24, 2006-Ohio-3455, 850 N.E.2d 47, ¶ 10, citing Civ.R. 56(C). "Even the inferences to be drawn from the underlying facts contained in the affidavits and depositions must be construed in the nonmoving party's favor." *Turner v. Turner*, 67 Ohio St.3d 337, 341, 617 N.E.2d 1123 (1993), citing *Hounshell v. Am. States Ins. Co.*, 67 Ohio St.2d 427, 433, 424 N.E.2d 311 (1981).

{¶ 12} "The moving party carries the initial burden of affirmatively demonstrating that no genuine issue of material fact remains to be litigated." *McAlpine v. McCloud*, 2021-Ohio-2430, 175 N.E.3d 948, ¶ 11 (2d Dist.), citing *Mitseff v. Wheeler*, 38 Ohio St.3d 112, 115, 526 N.E.2d 798 (1988). "Once the moving party has satisfied its burden of identifying those portions of the record that demonstrate the absence of a genuine issue of material fact, the nonmoving party bears a reciprocal burden to set forth specific facts showing a genuine issue for trial." *Shaeffer v. FC Industries Inc.*, 2d Dist. Montgomery No. 29758, 2023-Ohio-3732, ¶ 15, citing *Dresher v. Burt*, 75 Ohio St.3d 280, 293, 662 N.E.2d 264 (1996). "However, when a motion for summary judgment is made and supported as provided in Civ.R. 56, the nonmoving party may not rest on the mere allegations of his pleading, but his response, by affidavit or as otherwise provided in Civ.R.

56, must set forth specific facts showing the existence of a genuine triable issue." (Citations omitted.) *Mootispaw v. Eckstein*, 76 Ohio St.3d 383, 385, 667 N.E.2d 1197 (1996). "If no genuine issue of material fact exists, summary judgment must be awarded as a matter of law." *Dayton v. Parson*, 2023-Ohio-1509, 213 N.E.3d 1212, ¶ 6 (2d Dist.).

{¶ 13} "In a summary judgment review, the court may not weigh the proof or choose among reasonable inferences, and the court is limited to examining the evidence in the light most favorable to the non-moving party." *Coterel v. Reed*, 2016-Ohio-7411, 72 N.E.3d 1159, ¶ 12 (2d Dist.), citing *Dupler v. Mansfield Journal Co., Inc.*, 64 Ohio St.2d 116, 121, 413 N.E.2d 1187 (1980). "The purpose of summary judgment is not to try issues of fact, but rather to determine whether triable issues of fact exist." (Citation omitted.) *McGee v. Goodyear Atomic Corp.*, 103 Ohio App.3d 236, 242-243, 659 N.E.2d 317 (4th Dist.1995). Significantly, "[o]nly disputes over facts that might affect the outcome of the suit under the governing law will properly preclude the entry of summary judgment." *Byrd* at ¶ 12, quoting *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 248, 106 S.Ct. 2505, 91 L.Ed.2d 202 (1986). "[B]ecause summary judgment is a procedural device to terminate litigation, it must be awarded with caution. Doubts must be resolved in favor of the non-moving party." *Murphy v. Reynoldsburg*, 65 Ohio St.3d 356, 359, 604 N.E.2d 138 (1992), citing *Osborne v. Lyles*, 63 Ohio St.3d 326, 333, 587 N.E.2d 825 (1992).

### III. Unjust Enrichment

{¶ 14} "Unjust enrichment occurs when a person 'has and retains money or benefits which in justice and equity belong to another[.]' " *Johnson v. Microsoft Corp.*,

106 Ohio St.3d 278, 2005-Ohio-4985, 834 N.E.2d 791, ¶ 20, quoting *Hummel v. Hummel*, 133 Ohio St. 520, 528, 14 N.E.2d 923 (1938). "The elements of unjust enrichment include: 1) a benefit conferred by a plaintiff upon a defendant; 2) knowledge by the defendant of the benefit; and 3) retention of the benefit by the defendant under circumstances where it would be unjust to do so without payment." (Citations omitted.) *Harco Industries, Inc. v. Elco Textron, Inc.*, 2d Dist. Montgomery No. 19698, 2003-Ohio-2397, ¶ 14. "Unjust enrichment is an equitable claim based on a contract implied in law, * * * the purpose of which 'is not to compensate the plaintiff for any loss or damage suffered by him but to compensate him for the benefit he has conferred on the defendant.' " (Citation omitted.) *Bunta v. Superior VacuPress, L.L.C.*, 171 Ohio St.3d 464, 2022-Ohio-4363, 218 N.E.3d 838, ¶ 36, quoting *Hughes v. Oberholtzer*, 162 Ohio St. 330, 335, 123 N.E.2d 393 (1954). Furthermore, " '[a] person is not entitled to compensation on the ground of unjust enrichment if he received from the other that which it was agreed between them the other should give in return.' " *Ullmann v. May*, 147 Ohio St. 468, 478, 72 N.E.2d 63 (1947), quoting Restatement of the Law, Restitution, Section 107, Comment a (1937).

### IV. Analysis

{¶ 15} Plaintiffs asserted in their motion for summary judgment that for nearly seven years, James Hull paid Plaintiffs in full upon delivery of the cattle, or no later than 30 days thereafter, by a personal check written on the joint account of Defendants. However, in 2016, James Hull wrote seven checks that represented seven different transactions for the sale of cattle. According to Plaintiffs, the seven checks at issue

constituted negotiable instruments that represented an unconditional promise of James Hull to pay Plaintiffs the amounts listed on the checks. At no time did Plaintiffs submit the checks to a bank or attempt to cash them. However, Plaintiffs alleged that the checks were not presented to a bank based on James Hull's representation that, although he did not have sufficient funds at the time he provided the checks, he would compensate them later, and Plaintiffs did not want to pay any penalty fees if a check were rejected by the bank for insufficient funds. Accordingly, Plaintiffs asserted that the amount listed on the checks demonstrated the total debt owed and due. Plaintiffs pointed to James Hull's admissions that he received the cattle from Plaintiffs in the amounts identified on the checks to demonstrate that he knowingly received the benefit of possession of the cattle. Plaintiffs further submitted that Defendants made three subsequent payments via check totaling $8,800 toward the amount due, which demonstrated that the Defendants admitted to owing the debt.

{¶ 16} In opposing summary judgment as it related to the claim of unjust enrichment, Defendants argued that there was a genuine issue of material fact. While Defendants admitted that James Hull knowingly received cattle from Plaintiffs in the seven transactions at issue, Defendants denied that Plaintiffs did not receive payment in full for the actual value of the cattle, either through later payments or through third-party payments. According to Defendants, James Hull purchased the cattle from James Timmons and would provide a holder check at the time of receipt based on an agreed course of conduct. Because Plaintiffs did not keep records of which cattle were provided to James Hull, they requested a holder check to identify the number of cattle James Hull

hauled away. After receiving the cattle, James Hull would check them at his own facilities for any issues that might lessen their value. If all the cattle were determined to be adequate, James Hull would tell James Timmons to cash the holder check. However, if there were any problems with the heifers, James Hull would take the heifers to be sold at third-party establishments where the highest prices could be obtained, and Plaintiffs would receive payment directly from the third party for those heifers. Any difference in the balance between the original check and the actual value of the heifers that James Hull kept or sold to a third party would be addressed during the parties' next transaction. The original holder check would then be destroyed. Based on this course of conduct, Defendants denied owing Plaintiffs any money.

{¶ 17} Defendants also argued in their response that Tuara Hull was not a proper party and should be dismissed from the lawsuit. According to James Hull's affidavit, Tuara Hull was completely uninvolved in the cattle business. This was affirmed by James Timmons's deposition testimony stating that all transactions occurred between him and James Hull and that he had not spoken with Tuara Hull since the 1980s. James Timmons also testified during his deposition that he was "befuddled" that Tuara Hull's name was even on the complaint.

{¶ 18} The trial court granted summary judgment in favor of the Plaintiffs, finding that:

the court is not persuaded that the seven (7) checks were merely "holder" checks for purposes of documentation of the transaction and number of cattle sold. First, it would have been quite easy, and more logical, to record

the transactions, not with checks, but with a simple document. Second, two of the checks, numbers 17113 and 17210, do not even identify the number of cattle in the transaction. Third, it makes much more sense that Defendants tendered the checks to Plaintiffs and told them to hold off cashing or depositing them because Defendants did not have sufficient funds to cover them at the time. Finally, Defendants have failed to produce any checks they claim to have tendered to Plaintiffs bearing the adjusted value. Defendants concede that the subsequent value determination "almost always" resulted in at least some cattle being identified as having blemishes/defects, and that when this occurred, the parties "would agree upon the appropriate value and would exchange payment and/or settle up during their next face-to-face interaction." Defendants presented no evidence that they exchanged payment or settled up on these seven (7) transactions.

Summary Judgment Entry, February 4, 2022.

{¶ 19} The trial court then determined that the "only evidence before the Court" was the seven checks presented by Plaintiffs, which constituted a promise by Defendants to pay the specified sum on the checks. Accordingly, because the checks were never deposited or cashed, Defendants were unjustly enriched "to some extent" and the trial court granted summary judgment in favor of Plaintiffs.

{¶ 20} It is clear from the language in its decision that the trial court weighed the credibility of the parties in support of their respective positions. "Credibility issues

typically arise in summary judgment proceedings when one litigant's statement conflicts with another litigant's statement over a fact to be proved. Since resolution of the factual dispute will depend, at least in part, upon the credibility of the parties or their witnesses, summary judgment in such a case is inappropriate." *Turner*, 67 Ohio St.3d at 341, 617 N.E.2d 1123. Nevertheless, Plaintiffs argue that the trial court could weigh the credibility of the parties because the Defendants did not submit any checks or bank records to support their position and James Hull's affidavit was self-serving. We do not agree.

{¶ 21} We have previously stated that " '[a]n otherwise competent affidavit is not invalid for the sole reason that it is executed by a party and submitted to aver facts in opposition to summary judgment. To the contrary, a party's affidavit is competent to create a genuine issue of material fact if made on personal knowledge.' " *Smith v. CBert Properties, LLC*, 2d Dist. Montgomery No. 28058, 2019-Ohio-12, ¶ 11, quoting *Fifth Third Mtge. Co. v. Berman*, 10th Dist. Franklin No. 11AP-637, 2012-Ohio-4411, ¶ 17. Furthermore, Civ.R. 56 imposes no corroboration requirement. *Id.*

{¶ 22} James Hull's affidavit averred that beginning in 2010, James Timmons requested that he provide a holder check for the cattle he took back to his facilities for inspection so that James Timmons would have proof that the cattle belonged to him until they could settle-up on payment during their next transaction. If any of the cattle were deemed undesirable after inspection, James Hull would inform James Timmons, who would destroy the holder check, and James Hull would issue a replacement check based on the actual value of the cattle. The undesirable cattle would be sold to a third-party under James Timmons's name and James Timmons would receive a check directly from

the third-party. According to James Hull, the checks at issue were holder checks that should have been destroyed and payment for those underlying transactions had been completed based on subsequent transactions. James Hull denied ever telling James Timmons that he did not have sufficient funds in his account to cover the cattle he purchased and denied owing any money to the Plaintiffs.

{¶ 23} The deposition of James Timmons, as well as the affidavit of James Hull, clearly reflect that all business transactions for cattle occurred solely between James Timmons and James Hull via a handshake agreement. Both James Timmons and James Hull indicated that the value of a heifer depended on various factors, such as how close the heifer was to giving birth, whether the heifer had four good udders to produce milk, and whether they were large, mature cows who had calved before. James Timmons testified that James Hull determined what the value of the heifers was, not him. He also testified that James Hull would take the cows back to Hull's facilities to inspect them, verify they were bred, and process them. While James Timmons claimed that Hull paid him in full prior to James Hull's evaluation of the cattle, James Hull claimed that he provided a holder check as documentation for the amount of cattle he took, and the true value of the heifers would be determined after he evaluated them. James Hull would then provide replacement checks for the true value of the heifers and the holder checks would be destroyed.

{¶ 24} Whether or not it would have been "quite easy, and more logical" for James Timmons to keep documentation of all the cattle he sold in a simple document, James Timmons testified in his deposition that he did not maintain business records to document

either the number of cattle or which particular cattle were sold to James Hull. Instead, he relied on the memo line of the checks James Hull wrote to identify how many of his cattle were sold. Likewise, for any sales made to third parties, James Timmons would receive payment directly from the third-party, and the check would list the tag numbers of each of his cows sold in order for him to assess how many cows he sold. According to James Timmons, only the checks from James Hull that had the number of cattle listed on them in the memo line were direct transactions where James Hull gave him a check for the cattle upon receipt. The other checks that did not list the number of cattle in the memo line were still for cattle but were "replacement" checks rather than original purchase checks. James Timmons admitted in his deposition and affidavit that he and James Hull continued to do business together and engaged in more than just the seven transactions at issue during the time frame in question. All of James Hull's other checks were cashed without issue. Marilyn Timmons, James Timmons's wife and the bookkeeper for the farm, testified in her deposition that when they received a "replacement" check, she would destroy the original. However, she had no personal knowledge as to why they would receive a replacement check. Notably, the basis for why James Timmons did not cash the checks at issue was based on the allegation that James Hull told him not to cash them due to having insufficient funds. James Hull, on the other hand, denied ever telling James Timmons not to cash the checks due to insufficient funds.

{¶ 25} "In deciding whether an evidentiary conflict exists so as to preclude summary judgment, a trial court must adhere to Civ.R. 56(C) and view the record in the light most favorable to the party opposing the motion." *Turner*, 67 Ohio St.3d at 341, 617

N.E.2d 1123, citing *Kunkler v. Goodyear Tire & Rubber Co.*, 36 Ohio St.3d 135, 138, 522 N.E.2d 477 (1988). "The inferences to be drawn from the underlying facts contained in the affidavits and other exhibits must be viewed in the light most favorable to the party opposing the motion, and if when so viewed reasonable minds can come to differing conclusions the motion should be overruled." *Hounshell*, 67 Ohio St.2d at 433, 424 N.E.2d 311.

{¶ 26} In this case, because there was no written contract between the parties, the only two individuals who had personal knowledge of the particulars of their handshake agreement and the common practices between the parties were James Timmons and James Hull. James Hull's affidavit was based on personal knowledge regarding the course of conduct between him and James Timmons. Even still, Defendants relied on more than just James Hull's affidavit in responding to summary judgment to raise a genuine issue of material fact, most notably James Timmons's deposition testimony. We conclude that the trial court erred in its reasoning and ultimately in its decision that summary judgment was appropriate. Construing James Hull's affidavit and the evidence in the record in a light most favorable to Defendants, we conclude that there remained a genuine issue of material fact as to whether James Hull had made full payment for the cattle he purchased pursuant to their oral contract. Thus, the trial court erred in granting summary judgment on Plaintiffs' unjust enrichment claim.

{¶ 27} Defendants' first assignment of error is sustained.

### V. Second Assignment of Error

{¶ 28} In their second assignment of error, Defendants contend that the trial court

erred in granting summary judgment against Tuara Hull for unjust enrichment because the Plaintiffs failed to establish the necessary elements of unjust enrichment as it pertains specifically to her. Defendants request this Court reverse the trial court's grant of summary judgment and remand for further proceedings. Because we have concluded that the trial court erred in granting summary judgment on Plaintiffs' unjust enrichment claim as detailed above, we need not address the merits of the second assignment of error. App.R. 12(A)(1)(c).

{¶ 29} Defendants' second assignment of error is overruled as moot.

## VI. Conclusion

{¶ 30} Having sustained the first assignment of error, we reverse the judgment of the trial court and remand this case to the trial court for further proceedings consistent with this opinion.

. . . . . . . . . . . . .


WELBAUM, J. and HUFFMAN, J., concur.